# EXHIBIT A

# LEXINGTON INSURANCE COMPANY

**Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103**
(hereinafter called the Company)

### *PUBLIC ENTITY SELECT*SM RETAINED LIMIT LIABILITY POLICY
### DECLARATIONS

Policy No.: 048883349        Renewal of: **NEW**

Item 1. First Named Insured and Address:

STATE OF UTAH

5120 STATE OFFICE BUILDING

SALT LAKE CITY, UT 84114-0002

Item 2. Policy Period:

From: 07/01/2013   To: 07/01/2014
(Effective Date)      (Expiration Date)
at 12:01 a.m. Standard time at the address of the First Named insured shown above

Item 3. Limits of Insurance:

| | | |
|---|---|---|
| A.1. | Bodily Injury, Property Damage and Personal and Advertising Injury Aggregate Limit: | $20,000,000 |
| | Each Occurrence Limit: | $10,000,000 |
| | Automobile Each Occurrence Limit: | $10,000,000 |
| A.2. | Error and Omissions Aggregate Limit: | $20,000,000 |
| | Each Wrongful Act Limit: | $10,000,000 |
| A.3. | Employment Practices Aggregate Limit: | $20,000,000 |
| | Each Employment Practices Wrongful Act Limit: | $10,000,000 |
| A.4. | Employment Benefit Aggregate Limit: | $20,000,000 |
| | Each Employment Benefit Wrongful Act Limit: | $10,000,000 |

Item 4. Retained Limit:

$ 1,000,000      Any one **occurrence** or **wrongful act** or **employment practices wrongful act** or **employment benefit wrongful act** or series of continuous, repeated, or related **occurrences** or **wrongful acts** or **employment practices wrongful acts** or **employment benefit wrongful acts**

Item 5. Premium:

    A.   Total Advance Premium:   $ 717,500
    B.   Annual Minimum Premium: $ 717,500
    C.   Minimum Earned Premium: $ 179,375

Item 6. Audit Period: Not Subject to Audit

Item 7. Schedule of Underlying Insurance: Per Attached Schedule of Underlying Insurance (if applicable)

Item 8. Endorsements: Per Attached Form Schedule

Item 9. Claims Servicing Organization: SELF ADMINISTERED CLAIMS

Date of Issue: 07/01/2013

*David Bresnahan*
_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

**FORMS SCHEDULE**

Named Insured:   **STATE OF UTAH**

Policy No:  048883349                                                      Effective Date:   07/01/2013

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LX8437 | 12/08 | | PUBLIC ENTITY RET LIMIT DEC |
| LX8438 | 12/08 | | PUBLIC ENTITY RET LIMIT TXT |
| LX8703 | 05/11 | 001 | CRISIS RESPONSE COVERAGE ENDT |
| LX8369 | 11/07 | 002 | ACT OF TERRORISM RET LIMITS |
| MANUSCRIPT | | 003 | SCHOOL ENDORSEMENT |
| MANUSCRIPT | | 004 | FUNGUS/MOLD EXCLUSION w/ LIMIT |
| NAMEINSD | 02/94 | 005 | NAMED INSURED AMENDMENT |
| LX9466 | 10/03 | 006 | A.I. REQ'D BY WRITTEN CONTRACT |
| MANUSCRIPT | | 007 | HEALTHCARE EXCL ENDORSEMENT |
| MANUSCRIPT | | 008 | EXCLUSION FOR IMMUNITY GRANTED |

# LEXINGTON INSURANCE COMPANY

**Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103**

### *PUBLIC ENTITY SELECT* ᔆᴹ RETAINED LIMIT LIABILITY POLICY

**NOTICE: LOSS AMOUNTS INCLUDE DEFENSE COSTS AND AS SUCH, DEFENSE COSTS ARE INCLUDED WITHIN AND REDUCE THE APPLICABLE LIMIT OF INSURANCE. LOSS AMOUNTS ALSO APPLY AGAINST AND REDUCE THE RETAINED LIMIT.**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy the words **you** and **your** refer to the Named Insured(s) shown in the Declarations and any other person(s) or organization(s) qualifying as an **insured** under this Policy. The words **we**, **us** and **our** refer to the Company providing this insurance.

Other words and phrases that appear in boldface have special meaning. Refer to SECTION II. **DEFINITIONS.**

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, **we** agree to provide as follows:

## SECTION I.   COVERAGES

### A.   INSURING AGREEMENTS

#### 1.   BODILY INJURY, PROPERTY DAMAGE, AND PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE

**We** shall pay that portion of the **ultimate net loss**, in excess of the **retained limit** or **underlying insurance**, whichever is greater, that the **insured** becomes legally obligated to pay as **loss amounts** by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury**, **property damage**, or **personal and advertising injury** arising out of an **occurrence** during the Policy Period and to which this insurance applies.

#### 2.   ERRORS AND OMISSIONS LIABILITY

**We** shall pay that portion of the **ultimate net loss**, in excess of the **retained limit** or **underlying insurance**, whichever is greater, that the **insured** becomes legally obligated to pay as **loss amounts** arising out of **your wrongful act** that occurs during the Policy Period and arises solely in performing or failing to perform duties of the **insured organization** and to which this insurance applies.

#### 3.   EMPLOYMENT PRACTICES LIABILITY

**We** shall pay that portion of the **ultimate net loss**, in excess of the **retained limit** or **underlying insurance**, whichever is greater, that the **insured** becomes legally obligated to pay as **loss amounts** arising out of **your employment practices wrongful act** that occurs during the Policy Period and arises solely in performing or failing to perform duties of the **insured organization** and to which this insurance applies.

#### 4.   EMPLOYEE BENEFIT LIABILITY

**We** shall pay that portion of the **ultimate net loss**, in excess of the **retained limit** or **underlying insurance**, whichever is greater, that the **insured** becomes legally obligated to pay as **loss amounts** arising out of **your employment benefit wrongful act** that occurs during the Policy Period, in the **administration** of **your employee benefit program** and to which this insurance applies.

**B.   DEFENSE AND DEFENSE COSTS**

1.  **We** will have the right and duty to defend any **claim** or **suit** against the **insured** seeking damages for **bodily injury**, **property damage**, or **personal and advertising injury**, **wrongful act(s)**, **employment practices wrongful act(s)**, or **employment benefit wrongful act(s)** to which this insurance applies, even if the **claim** or **suit** is groundless, false or fraudulent when the **retained limit**, or total applicable limits of **scheduled underlying insurance** and any applicable **other insurance**, whichever is greater, have been exhausted by the payment of **loss amounts** to which this policy applies.

2.  **We** will have no duty to defend the **insured** against any **claim** or **suit** seeking damages for **bodily injury**, **property damage**, or **personal and advertising injury**, **wrongful act(s)**, **employment practices wrongful act(s)**, or **employment benefit wrongful act(s)** to which this insurance does not apply, including, but not limited to, any **claim** or **suit** excluded as a result of the application of Exclusion NN. Under no circumstances shall coverage provided by this Policy be any broader than coverage provided by **scheduled underlying insurance** providing coverage for the same or similar insurance risks.

3.  When **we** assume the defense of any **claim** or **suit** against the **insured** to which this insurance applies:

    a.  **We** have the right to investigate, defend, and settle the **claim** or **suit** as **we** deem necessary.

    b.  **We** will pay the following, to the extent that they are not covered by **scheduled underlying insurance** or any applicable **other insurance**:

        i.   Premiums on bonds to release attachments for amounts not exceeding the applicable limit of insurance of this Policy, but **we** are not obligated to apply for or furnish any such bond;

        ii.  Premiums on appeal bonds required by law to appeal a judgment in any **suit** not exceeding the applicable limit of insurance of this Policy, but **we** are not obligated to apply for or furnish any such bond;

        iii. All court costs taxed against the **insured** in any **suit**;

        iv.  Pre-judgment interest awarded against the **insured** on that part of the judgment within the applicable limits of insurance of this Policy **we** pay. If **we** make an offer to pay the applicable limits of insurance of this Policy, **we** will not pay any pre-judgment interest based on that period of time after the offer;

        v.   All post-judgment interest that accrues after entry of judgment within the applicable limits of insurance of this Policy **we** pay, and before **we** have paid, offered to pay, or deposited in court that part of the judgment that is within the applicable limits of insurance of this Policy; or

        vi.  **Your** expenses incurred with **our** consent or at **our** request.

4.  Except as provided in Subparagraph B.1. above, **we** will have no duty to defend any **suit** against the **insured. We** will, however, have the right, but not the duty, to participate in the defense of any **suit** and the investigation of any **claim** to which this policy may apply. If **we** exercise this right, **we** will do so at **our** own expense.

5.  **We** will not defend any **suit**, or pay any attorney fees or litigation expenses including, without limitation, the expenses described in subparagraph 3.b., above that accrue after the applicable limits of insurance of this policy have been exhausted by the payment of damages and **we** will have the right to withdraw from the further defense of such **suit** by tendering control of said defense to the **insured.**

6.  All expenses **we** incur in the defense of any **claim** or **suit** are included within the limits of insurance, except for salaries of **our** employees, **our** office expenses, and any expenses of any **claims** or **suit** by the servicing organization **we** have engaged.

7. If allegations of **employment practices wrongful acts** are not subsequently proved after a trial by a final judgment or other adjudication adverse to **you** or if there is a dismissal of the **claim** or **suit** before a trial, **we** will reimburse **you** up to fifty percent (50%) of reasonable defense costs **you** incur subject to a maximum amount of $250,000. However, reimbursement of such defense costs will not be made by **us** to **you** if there is any kind of settlement with a third party.

## SECTION II.   DEFINITIONS

A. **Administration** means:

1. Counseling employees, including their independents and beneficiaries, with respect to the **employee benefit program**;

2. Handling records in connection with the **employee benefit program**; and/or

3. Effecting or terminating any **employee's** participation in a plan included in the **employee benefit program**.

B. **Automobile** means a land motor vehicle, trailer or semi trailer; or, such land motor vehicles used in a transit or public transportation system operating over non-fixed routes as provided in the exception provisions of Exclusion CC.

C. **Bodily Injury** means bodily harm, sickness, disability or disease sustained by a person, including death resulting from any of these at any time. **Bodily injury** includes mental injury, mental anguish, humiliation, shock or death if resulting directly from **bodily injury. Bodily injury** shall include care, loss of services, loss of consortium, or death resulting at any time from the **bodily injury**.

D. **Claim(s)** means a written demand for monetary damages.

E. **Dam** means any artificial barrier, together with appurtenant works, which does or may impound or divert water.

F. **Employee** includes a **leased worker** or a volunteer worker while acting within the scope of his/her duties as such and performing work in relation to **your insured organization**.

G. **Employee benefit program** includes any employee benefit plan including, but not limited to, the following:

Group life insurance, group accident or health insurance, profit sharing plans, pension plans and stock subscription plans provided that no one other than an **employee** (not including a **leased worker** or volunteer worker) may subscribe to such insurance or plans, unemployment insurance, social security benefits, workers' compensation and disability benefits.

H. **Employment benefit wrongful act** means any actual or alleged negligent act, error, or omission in the **administration** of the **employee benefit program**.

I. **Employment practices wrongful act** shall mean any actual or alleged negligent act, error, or omission resulting in loss to:

1. A person arising out of any;

   a. Refusal to employ that person; or

   b. Termination of that person's employment; or

   c. Employment related practices, policies, acts, errors, or omissions, including, but not limited to, coercion, demotion, evaluation, **retaliation**, reassignment, discipline, defamation, harassment, failure to promote, humiliation, discrimination; or acts, errors, or omissions as described in this subparagraph I.1.c. directed at a **whistle-blower**; or

   d. Discrimination on any basis, including, but not limited to, race, creed, religion, ethnic background, national origin, age, handicap, sex or sexual orientation; but not intentionally committed by **you** or at **your** direction.

    **2.** The spouse, child, parent, brother or sister of that person as a consequence of loss to that person to whom any of the employment-related practices described in subparagraphs. I.1.a., I.1.b., I.1.c., or I.1.d. above apply.

This coverage applies:

    **1.** Whether **you** may be liable as an **employee** or in any other capacity; and

    **2.** To any obligation to share damages with or repay someone else who must pay damages because of the **employment practices wrongful act.**

**J.** **First aid** means the immediate and emergency care given to an ill or injured person before regular medical aid can be obtained.

**K.** **Hired automobile** means an **automobile** used under contract on **your** behalf or loaned to **you,** provided such **automobile** is not owned by **you** or registered in **your** name or in the name of any of **your employees** or servants.

**L.** **Hostile fire** means a fire that becomes uncontrollable or breaks out from where **it** was intended to be.

**M.** **Incidental Medical Malpractice Service**s means the services of a licensed professional employed by the **insured organization** or acting on behalf of the insured organization under written contract, but only within the scope of their duties for the **insured organization** and in the performance of:

    **1.** paramedic and emergency medical technician services, including ambulance operations, rendered or which should have been rendered to any person;

    **2.** occupational physical examinations;

    **3.** services rendered by nurses (other than nurses employed in a position as either a nurse practitioner or physician's assistant);

    **4.** services rendered by speech therapists, speech pathologists, nutritionists, psychologists, audiologists, or physical therapists; or

    **5.** services performed by coroners or medical examiners.

**Incidental Medical Malpractice Service**s does not include any **employment practice wrongful act** committed by such licensed professionals.

**N.** **Insured contract** means:

    **1.** A contract for a lease of premises including but not limited to premises rented or loaned to **you;**

    **2.** A sidetrack agreement;

    **3.** Any easement or license agreement;

    **4.** An obligation, as required by ordinance;

    **5.** An elevator maintenance agreement; or

    **6.** That part of any other contract or agreement pertaining to **your insured organization** under which **you** assume the tort liability of another party to pay for **bodily injury, property damage,** or **personal and advertising injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An insured contract does not include that part of any contract or agreement that indemnifies an architect, engineer, or surveyor, his agents or employees, for injury or damage arising out of:

    **1.** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs, or specifications; or

    **2.** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

**O.**    **Insured Organization** means, any of the following:

    **1.** a **municipality**, governmental body, governmental department, or governmental unit,

    **2.** a religious organization or institution,

    **3.** a school or school board,

    **4.** a non-profit organization, or

    **5.** a risk sharing pool or risk purchasing group,

which is specifically named as the Named Insured in the Declarations.

**P.**    **Joint powers authority(ies)** means two (2) or more public agencies joined together by a joint agreement in order to jointly exercise any power common to the contracting parties, including, but not limited to, the power to create risk pooling and joint purchase of private insurance.

**Q.**    **Land subsidence** means the movement of land or earth, including, but not limited to, sinking or settling of land, earth movement, earth expansion and/or contraction, landslide, slipping, falling away, caving in, eroding, earth sinking, and earth rising or shifting or titling.

**R.**    **Law Enforcement Services** means the services of an **insured** in the performance of their duties as a law enforcement official, officer, auxiliary officer, **employee**, or volunteer of a law enforcement agency or department of the **insured organization**. **Law Enforcement Services** does not include any **employment practice wrongful act** committed by such **insureds**.

**S.**    **Leased worker** means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm, to perform duties related to the conduct of **your insured organization**.

**T.**    **Loading or unloading** means the handling of property:

    **1.** While it is in or on an **automobile**; or

    **2.** While it is being moved from an **automobile** to the place where it is finally delivered.

But **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the **automobile**.

**U.**    **Loss amounts** means damages and shall also include all fees, including legal fees, costs and expenses, as well as those expenses described in subparagraph B.3.b. of SECTION I. COVERAGES that **we** incur in connection with the defense and settlement of **claims** or **suits** **we** defend. **Loss amounts** shall not include salaries of **our** employees.

**V.**    **Municipality** means a legally incorporated or duly authorized association of inhabitants of a limited area limited to the following: city, town, county, village, township, borough, hamlet, burgh, or state.

**W.**    **Nuclear facility** means:

    **1.** Any **nuclear reactor**,

    **2.** Any equipment or device or used for:

        **a.** Separating the isotopes of uranium or plutonium,

        **b.** Processing of utilizing **spent fuel**, or

        **c.** Handling, processing or packaging nuclear **waste**;

    **3.** Any equipment or device used for the processing, fabricating, or alloying of special **nuclear material** if any time the total amount or such material in **your** custody at the premises where such equipment or device is located consists of or contains more that 25 grams of plutonium or uranium 233, or any combination thereof, or more that 250 grams of uranium 235;

   **4.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of nuclear **waste**; or

   **5.** The site on which 1. and 2. above are located, all operations conducted on those sites, and all premises used for such operations.

**X.** **Nuclear material** means **source material**, **special nuclear material** or **by-product material. Source material**, **special nuclear material** and **by-product material** have the meanings given them in Atomic Energy Act of 1954 or in any law amendatory thereof.

**Y.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**Z.** **Occurrence** means:

   **1.** With respect to **bodily injury** or **property damage**, an accident, including continuous, repeated, or related exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** neither expected or intended from **your** standpoint. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **occurrence.**

   In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **occurrence**, and shall be deemed to occur only when such damage first commences.

   **2.** With respect to **personal and advertising injury**, an offense arising out of **your insured organization** work that causes **personal and advertising injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**AA.** **Other insurance** means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this Policy.

   However, **other insurance** does not include **scheduled underlying insurance**, the **retained limit** or any policy of insurance specifically purchased to be excess of this Policy affording coverage that this Policy also affords.

**BB.** **Owned automobile** means an **automobile** owned by **you** or under long term lease to **you**.

**CC.** **Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

   **1.** False arrest, detention or imprisonment;

   **2.** Malicious prosecution;

   **3.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   **4.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **5.** Oral or written publication of material that violates a person's right of privacy; or

   **6.** Infringing upon another's copyright, trade dress or slogan.

**DD.** **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

   **Pollutants** shall not include potable water, water distributed to the consumer intended to be potable water, agricultural water, or water furnished to commercial users, or water used for fire suppression. **Pollutants** shall also not include smoke or fumes from a **hostile fire.**

**EE.** **Products-completed operations hazard** means all **bodily injury** and **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

1. Products that are still in **your** physical possession; or

2. Work that has not yet been completed or abandoned.

**Your** work will be deemed completed at the earliest of the following times:

1. When all of the work called for in **your** contract has been completed;

2. When all of the work to be done at the site has been completed **if your** contract calls for work at more that one job site; or

3. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The **products-completed operations hazard** does not include **bodily injury** or **property damage** arising out of:

1. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle owned or operated by **you** created by the **loading or unloading** of it by any **insured**; or

2. The existence of tools, uninstalled equipment or abandoned or unused materials.

FF. **Property damage** means:

1. Physical injury to or destruction of tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to have occurred at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured or destroyed. All such loss of use will be deemed to have occurred at the time of the **occurrence** that caused it.

GG. **Retained limit** means the **retained limit** applicable to each and every **occurrence**, **wrongful act**, **employment practices wrongful act,** or **employment benefit wrongful act** as shown in the Declarations and to which this insurance applies.

The **retained limit** shall be reduced by the payment of **loss amount**s, but shall not be reduced by the salaries of **your employee**s, **your** office expenses, or expenses of any claims servicing organization that **you** have engaged.

HH. **Retaliation** means **your employment practice**s **wrongful act** relating to or alleged to be in response to any of the following activities:

1. The disclosure or threat of disclosure by **your employee** to a superior or to any governmental agency of any act by **you** which is alleged to be a violation of any federal, state, local, or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

2. The actual or attempted exercise by **your employee** of any right that such **employee** has under law, including rights under workers' compensation laws, the Family and Medical Leave Act, the American with Disabilities Act or any other law relating to **employee** rights;

3. The filing of any **claim** or **suit** under the Federal False Claims Act of any other federal state, local or foreign **whistle-blower** law; or

4. Strikes of **your employee**s.

II. **Scheduled underlying insurance** means:

1. The policy or policies of insurance and limits of insurance (plus any self-insured retention applicable thereto) shown in the Schedule of Underlying Insurance;

2. automatically any renewal or replacement of any policy in subparagraph II.1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced; and

3. Any other valid and collectible risk financing mechanism provided under a **joint powers authority.**

**Scheduled underlying insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

JJ. **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used in or exposed to radiation in a **nuclear reactor.**

KK. **Suit** means a civil proceeding in which damages are alleged because of **bodily injury**, **property damage**, or **personal and advertising injury**, **wrongful act(s)**, **employment practices wrongful act(s)**, or **employment benefit wrongful act(s)** to which this insurance applies. **Suit** includes:

1. An arbitration proceeding in which such damages are claimed and to which **you** must submit or do submit with **our** consent; or

2. Any other alternative dispute resolution proceeding in which such damages are claimed and to which **you** submit with **our** consent.

LL. **Ultimate net loss** means the sum actually paid or payable due to a **claim** or **suit** for which **you** are liable either by a settlement to which **we** agreed or a final judgment, and shall include defense costs. Such sum will include proper adjustments for recoveries and salvage.

MM. **Underlying insurance** refers to the policies listed in the **schedule of underlying insurance** and includes:

1. Any renewal or replacement of such policies;

2. Any **other insurance** (plus any self-insured retention applicable thereto) available to the **insured** and providing coverage for an **occurrence**, **wrongful act**, **employment practices wrongful act,** or **employment benefit wrongful act** covered under this Policy; and

3. Any other valid and collectible risk financing mechanism provided under a **joint powers authority.**

NN. **Underlying insurer** means any insurer which provides a policy listed in the **schedule of underlying insurance** and includes any insurer which provided any renewal or replacement of such policies and any insurer which provides any **other insurance** available to **you.**

OO. **Waste** means any waste material containing **by-product material** and arising out of the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility.**

PP. **Whistle-blower** means an **employee**, who discloses or threatens to disclose to a superior or any governmental agency, or who gives testimony relating to any action by **you**, which may be a violation of public policy as reflected in legislation, administrative rules, regulations or decisions, judicial decisions, or professional code of ethics.

QQ. **Wrongful act** means:

Any actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by **you**, including, but not limited to, those constituted by:

1. Any violation of antitrust statutes;

2. Any negligent ministerial act;

3. Any faulty preparation or approval of maps, plans, reports, surveys, designs, bid documents, bid specifications, other specifications, or inaccuracies due to estimates of probable costs, but only if any of the afore listed services are provided by any **insured** for another **insured**;

**RR. Your Product** means:

    **1.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **a. You**;

        **b.** A person or organization whose business or assets **you** have acquired; and

    **2.** Containers, other than vehicles, materials, parts or equipment furnished in connection with such goods or products;

    **Your product** includes:

    **1.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

    **2.** The providing of or failure to provide warnings or instructions.

**SS. Your Work** means:

    **1.** Work or operations performed by **you** or on **your** behalf; and

    **2.** Materials, parts or equipment furnished in connection with such work or operations.

    **Your work** includes:

    **1.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

    **2.** The providing of or failure to provide warnings or instructions.

## SECTION III.   LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below state the most **we** will pay in excess of **your retained limit** regardless of the number of:

    **1. Insureds.** However, in the event that there are multiple **municipalities** as Named Insureds, **our** Limits of Insurance shall apply separately to each **municipality** insured under this Policy;

    **2. Claims** made or **suits** brought; or

    **3.** Persons or organizations making **claims** or bringing **suits.**

**B.** The Bodily Injury, Property Damage, and Personal and Advertising Injury Aggregate Limit as shown in the Declarations is the most **we** will pay for the sum of all **loss amounts** because of **bodily injury, property damage**, and/or **personal and advertising injury**, including **loss amounts** within the **products-completed operation hazard**, for which coverage is provided under subparagraph A.1. of the Insuring Agreements (SECTION I. COVERAGES), except for **loss amounts** because of **bodily injury** or **property damage** to which this insurance applies, caused by an **occurrence** and resulting from the ownership, maintenance or use of a covered **automobile.**

**C.** Subject to B. above, the Each Occurrence Limit as shown in the Declarations is the most **we** will pay for all **loss amounts** because of **bodily injury, property damage**, or **personal and advertising injury** arising out of one **occurrence**, for which coverage is provided under subparagraph A.1. of the Insuring Agreements (SECTION I. COVERAGES), except for **loss amounts** because of **bodily injury** or **property damage** to which this insurance applies, caused by an **occurrence** and resulting from the ownership, maintenance or use of a covered **automobile.**

**D.** The Automobile Each Occurrence Limit as shown in the Declarations is the most **we** will pay for all **loss amounts** because of **bodily injury** or **property damage**, for which coverage is provided under subparagraph A.1. of the Insuring Agreements (SECTION I. COVERAGES), arising out of one **occurrence** caused by the ownership, maintenance or use of a covered **automobile** regardless of the number of persons or organizations sustaining **bodily injury** or **property damage.**

**E.** The Error and Omissions Aggregate Limit as shown in the Declarations is the most **we** will pay for the sum of all **loss amounts** because of **wrongful acts** for which coverage is provided under subparagraph A.2. of the Insuring Agreements (SECTION I. COVERAGES).

**F.** Subject to E. above, the Each Wrongful Act Limit as shown in the Declarations is the most **we** will pay for all **loss amounts** because of a single **wrongful act** for which coverage is provided under subparagraph A.2. of the Insuring Agreements (SECTION I. COVERAGES). All continuous, repeated, related, or interrelated **wrongful acts** will be deemed to be a single **wrongful act** and will be deemed to have occurred when the first of such **wrongful acts** occurs.

**G.** The Employment Practices Aggregate Limit as shown in the Declarations is the most **we** will pay for the sum of all **loss amounts** because of **employment practices wrongful acts** for which coverage is provided under subparagraph A.3. of the Insuring Agreements (SECTION I. COVERAGES).

**H.** Subject to G. above, the Each Employment Practices Wrongful Act Limit as shown in the Declarations is the most **we** will pay for all **loss amounts** because of a single **employment practices wrongful act** for which coverage is provided under subparagraph A.3. of the Insuring Agreements (SECTION I. COVERAGES). All continuous, repeated, related, or interrelated **employment practices wrongful acts** will be deemed to be a single **employment practices wrongful act** and will be deemed to have occurred when the first of such **employment practices wrongful acts** occurs.

**I.** The Employment Benefit Aggregate Limit as shown in the Declarations is the most **we** will pay for the sum of all **loss amounts** because of **employment benefit wrongful acts** for which coverage is provided under subparagraph A.4. of the Insuring Agreements (SECTION I. COVERAGES).

**J.** Subject to I. above, the Each Employment Benefit Wrongful Act Limit as shown in the Declarations is the most **we** will pay for all **loss amounts** because of a single **employment benefit wrongful act** for which coverage is provided under subparagraph A.4. of the Insuring Agreements (SECTION I. COVERAGES). All continuous, repeated, related, or interrelated **employment benefit wrongful acts** will be deemed to be a single **employment benefit wrongful act** and will be deemed to have occurred when the first of such **employment benefit wrongful acts** occurs.

**K.** **Loss amounts** include defense costs and as such, defense costs are included within and reduce the applicable limit of insurance.

**L.** The **retained limit** as shown in the Declarations:

    **1.** Shall be reduced by **loss amounts** paid for **occurrences**, **wrongful acts**, **employment practices wrongful acts**, or **employee benefit wrongful acts** covered under this Policy; and

    **2.** Applies separately to each and every **occurrence**, **wrongful act**, **employment practices wrongful act**, or **employee benefit wrongful act** or series of continuous, repeated, or related **occurrences**, **wrongful acts**, or **employee benefit wrongful acts**; and

    **3.** Applies separately to each **municipality** insured under this Policy in the event that there are multiple **municipalities** as Named Insureds.

**M.** **Our** duty to pay any sums that **you** become legally obligated to pay arises only after there has been a complete expenditure of **your retained limit** or all **underlying insurance**, whether collectible or not, has been exhausted by means of payments for judgments, settlements, or defense costs. **Your retained limit** shall not be exhausted by **your** office expenses, **employees'** salaries, or expenses of any **claims** servicing organization that **you** have engaged. **We** will then be liable only for that portion of damages in excess of **your retained limit** up to **our** limits of insurance.

**N.** If the limits of insurance of the **underlying insurance** are less than **your retained limit**, **you** shall bear the risk of the difference. If the limits of insurance of the **underlying insurance**, however, are greater than **your retained limit**, this Policy is in excess of the greater limits.

**O.**   The limits of insurance in effect when the first **claim** or **suit** is made and reported to **us** shall apply.

**P.**   The Limits of Insurance apply separately to each consecutive annual period. The Policy Period begins with the effective date shown in the Declarations. If the Policy Period is extended after issuance for an additional period of less than twelve (12) months, the additional period will be deemed part of the last preceding period.

## SECTION IV.   WHO IS AN INSURED

**Insured** means each of the following:

**A.**   The Named Insured designated in the Declarations:

**B.**   Those individuals who were or now are elected or appointed officials of the Named Insured, including members of its governing body or any other agencies, districts, authorities, committees, trustees, boards, commissions, or similar entity of the Named Insured, while acting on behalf of the Named Insured:

**C.**   Any of **your employees**, servants, or volunteers while acting within the course and scope of their employment or duties as volunteers;

**D.**   Any and all legally authorized **joint power authority(ies)** representing any listed Named Insured under this Policy. The following are also **insureds** with respect to such **joint power authority(ies)**:

    **1.**   The **municipality** agencies participating as member agencies in the **joint power authority(ies)**, and any and all districts, authorities, committees, trustees, boards, commissions, or similar entity subject to the direction or control of such agencies or for which the board members act as governing body. The member agency includes all departments and constituent agencies of the member agency; and

    **2.**   Any person(s) who are past or present elected or appointed officers, **employees**, or authorized volunteers of the member agencies, whether or not compensated while action on behalf of the member agencies and within their scope of employment or volunteer capacities, including acting on boards at the direction of the agencies.

**E.**   Any person:

    **1.**   Designated in paragraphs A. through D. with respect to any **automobile** not owned by **you** that is used in **your** operations as a **insured organization**; and

    **2.**   Using any **owned automobile** or **hired automobile** or any person legally responsible for the use thereof, provided that the **automobile** is being used with **your** permission.

The coverage granted by this provision, however, does not apply to:

    **1.**   Any person operating an **automobile** while working in a business that sells, services, repairs, delivers, tests, parks, or stores **automobiles**; or

    **2.**   The owner or lessee of any **hired automobile**, other than the **insured** or any agent or **employee** of such owner or lessee.

## SECTION V. EXCLUSIONS

This insurance does not apply to and **we** will not defend or pay for **claims** or **suits** against any **insured**:

**A.**   For **bodily injury** or **property damage**, arising out of a **wrongful act, employment practices wrongful act,** or **employee benefit wrongful act** whether causing or contributing to such **bodily injury** or **property damage**. However, this exclusion does not apply to:

    **1.**   **Bodily injury** or **property damage** arising out of an **occurrence**. In such case, coverage applies only to the **occurrence** and is subject to the terms and conditions of this Policy;

   **2.** **Bodily injury** or **property damage** arising out of a **wrongful act** in the rendering or failing to render **Law Enforcement Service**s; or

   **3.** **Bodily injury** or **property damage** arising out of a **wrongful act** in the rendering or failing to render **Incidental Medical Malpractice Service**s or **first aid**.

**B.** Arising out of the ownership, maintenance, **loading or unloading**, use or operation of any aircraft, airfields, runways, hangars, buildings or other properties in connection with aviation activities.

However, in connection with airfields, runways, hangers, buildings or other properties in connection with aviation activities, this exclusion shall not apply to those areas open to the public for the purpose of entering, leaving or using the airport facilities, including parking lots and garages;

**C.** For which **you**, or any carrier as **your insured**, may be held liable under any workers' or unemployment compensation law, disability benefits law or any similar law;

**D.** Arising out of the liability of **your employee** for **bodily injury** to another of **your employee**(s) injured in the course of his or her employment. However, this exclusion does not apply to liability assumed by **you** under any **insured contract**;

**E.** Arising out of any **personal and advertising injury** due to:

   **1.** Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   **2.** The failure of goods, products or services to conform with advertised quality or performance;

   **3.** The wrong description of the price of goods, products, or services; or

   **4.** Operations by an **insured** whose primary business is advertising, broadcasting, publishing or telecasting.

**F.** For **property damage**:

   **1.** To property owned by **you**; or

   **2.** To aircraft in **your** care, custody or control or as to which **you** are for any purpose exercising physical control.

**G.** Arising out of any liability for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **1.** Assumed in a contract or agreement that is an **insured contract** provided the **bodily injury**, **property damage**, or **personal and advertising injury** occurs subsequent to the execution of the contract or agreement; or

   **2.** That **you** would have in the absence of the contract or agreement;

**H.** **1.** For **bodily injury** or **property damage** due to an **occurrence** or loss due to **wrongful act** or **employment practices wrongful act** which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time;

   **2.** For any loss, cost, or expense arising out of any:

      **a.** Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

      **b.** **Claim** or **suit** by, or on behalf of, a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

However, 2.b. shall not apply to such loss, cost, or expense arising from any spill, release, or other hazardous conditions at or from the premises, equipment, or location(s) which **you** do not own, rent, control or occupy.

However, this exclusion shall not apply to the following:

i. **bodily injury if** sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat that building; water for personal use by the building's occupants or their guests;

ii. Any liability arising out of **bodily injury** or **property damage** due to an **occurrence** or loss due to a **wrongful act** or **employment practices wrongful act** by **you** arising out of heat, smoke, or fumes from a **hostile fire**;

iii. Any liability arising **our** of explosion, lightning, windstorm, vandalism or malicious mischief, collapse, riot and civil commotion, flood, earthquake or collision, upset, or overturn of an **automobile** or equipment;

iv. Any liability arising out of police use of mace, oleoresin capsicum (o.c.), pepper gas or tear gas;

v. Weed abatement or spraying; or

vi. Any liability arising out of the **products-completed operations hazard.**

All **bodily injury** or **property damage** due to an **occurrence** or loss due to a **wrongful act** or **employment practices wrongful act** arising from i., ii., iii., iv., v., or vi. above arising out of the same, interrelated, associated, repeated or continual discharge, dispersal, release or escape of **pollutants** shall be deemed an **occurrence**, **wrongful act**, or **employment practices wrongful act.** The commencement of such discharge, dispersal, release or escape of **pollutants** shall be recorded and reported to the Risk Manager or designated Department Head within a seventy-two (72) period.

It is further agreed that regardless of whether any **suit** or **claim** against **you** has been made, **you** shall give written notice to **us** or any of **our** authorized brokers within forty (40) calendar days of the Risk Manager's or designated Department Head's recorded entry of such discharge, dispersal, release or escape of **pollutants** which may result in liability for **bodily injury** or **property damage** due to an **occurrence** or loss due to a **wrongful act** or **employment practices wrongful act** as described in i., ii., iii., iv., v., or vi. above;

I. 1. Arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers, or asbestos dust; or

2. For any of **your** obligations to indemnify any party because of damage arising out of **bodily injury** or **property damage** due to an **occurrence** or loss due to a **wrongful act** or **employment practices wrongful act** at any time as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers, or asbestos dust; or

3. For any of **your** obligations to defend any **claim** or **suit** against **you** seeking damages arising out of **bodily injury** or **property damage** due to an **occurrence** or loss due to a **wrongful act** or **employment practices wrongful act**, if such **claim** or **suit** results from or is contributed to any combination of the following: manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers, or asbestos dust.

**We** also shall not pay any cost related to the defense, investigation, and settlement of any such **claim** or **suit** as described in I., 2., or 3. above;

J. For liability:

1. With respect to which **you** are an insured under a nuclear energy liability policy by the Mutual Atomic Energy Liability Underwriters, the American Nuclear Insurers, or the Nuclear Insurance Association of Canada, or any successor organizations, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2. Arising out of the hazardous properties of **nuclear material** with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) **you** are, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization; or

3. Arising out of the hazardous properties of **nuclear material**, if:

   a. The **nuclear material** is at any **nuclear facility** owned by, or operated by **you** or on **your** behalf or has been discharged or dispersed therefrom;

   b. The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by **you** or on **your** behalf; or

   c. The damage or loss arises out of the furnishing by **you** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion c. applies only to damage or loss to such **nuclear facility** and any property located at the facility.

   **We** also shall not pay any cost related to the defense, investigation, and settlement of any **claim** or **suit**.

K.  Arising out of the failure or inability to supply or provide an adequate supply of electricity, fuel, or water arising out of the interruption of the electrical power, fuel, or water supply;

L.  Arising out of a **wrongful act** by **you** or on **your** behalf in the handling of **claims** or **suits** within **your retained limit** whenever **you** investigate, defend, or settle such **claims** or **suits** or elect a third party to investigate, defend or settle such **claims** or **suits**;

M.  Arising out of the effecting or failure to effect insurance contracts;

N.  Arising out of the Employee Retirement Income Security Act of 1974 or amendments thereto;

O.  Arising out of an alleged willful commission of a crime by **you** or other dishonest, fraudulent, or malicious act. At **our** discretion, however, **we** will pay for defense costs arising out of a civil suit until final adjudication, judgment, or settlement to which **we** have agreed. If the judgment or final adjudication is adverse to **you**, **you** will reimburse **us** for all costs associated with the defense.

This exclusion shall not apply to any vicarious liability that any **insured** has with regard to the managerial, advisory, supervisory, or controlling obligations over the actions of another **insured**.

P.  Arising out of **your wrongful act** or **your employment practices wrongful act** for gain, profit, or advantage to which **you** are not legally entitled. At **our** discretion, however, **we** will pay for defense costs arising out of a civil suit for any **claim** or **suit** arising from an alleged willful commission of a crime by **you** or other dishonor, fraudulent or malicious act, for any **claim** or **suit** arising out of **your wrongful act** or **your employment practices wrongful act** for gain, profit, or advantage to which **you** are not legally entitled until final adjudication, judgment or settlement to which **we** have agreed. If the judgment or final adjudication is adverse to **you**, **you** will reimburse **us** for all costs associated with the defense;

This exclusion shall not apply to any vicarious liability that any **insured** has with regard to the managerial, advisory, supervisory, or controlling obligations over the actions of another **insured**;

Q.  For **personal and advertising injury**:

1. Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity; or

    **2.**  Arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period. All **personal and advertising injury** arising out of publication of the same or similar material subsequent to the beginning of the Policy Period is also excluded;

**R.**    Arising out of the purchase, sale, or offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

**S.**    Arising out of any representations made at any time in relation to the price or value of any security, debt, bank deposit, or financial interest or instrument, including, but not limited to, advice given to any person to participate in any plan included in the **employee benefit program**;

**T.**    Arising out of any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument;

**U.**    Arising out of an insufficiency of funds to meet any obligation under any **employee benefit program**;

**V.**    Arising out of act, error, or omission by the **insured** to effect and maintain insurance or bonding for plan property or assets of **employee benefit program**;

**W.**    Arising out of failure of performance or performance under any contract by an insurer of benefits subject to the **employee benefit program**;

**X.**    For any **property damage** arising out of **land subsidence** for any reason whatsoever;

**Y.**    Arising out of direct condemnation of property or exercise of power of eminent domain by **you** or on **your** behalf, or inverse condemnation, or any taking of property by **you** which is compensable under the Fifth or Fourteenth Amendments to the United States Constitution, or any taking of property by **you** which is compensable under the law of the State in which the **claim** or **suit** is made;

This exclusion shall not apply to physical injury or to destruction of tangible property, including all resulting loss of use of such property for which **you** may be legally responsible and for which recovery is sought for **claims** or **suits** for inverse condemnation, by whatever name called; provided, however, that in any case which a **claim** or **suit** for inverse condemnation, by whatever name called, is made against **you**, coverage shall only exist for physical injury to or destruction of tangible property, including all resulting loss of use of that property, and there shall be no coverage for reduced value of property (diminution of value), attorney fees, expert fees, severance damages, relocation costs or any other form of relief, however denominated;

**Z.**    Arising out of the rupture, busting, over-topping, flooding, cracking, seepage, under-seepage, accidental discharge or partial or complete structural failure of any **dam**;

**AA.**  For **wrongful acts** arising out of refund of taxes, fees, or assessments;

**BB.**  For liability arising out of, or in connection with, the operation of any hospital, clinic, or health care facility, owned or operated by the **insured**, including, but not limited to:

    **1.**  The rendering or failure to render:

        **a.**  Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

        **b.**  Any service or treatment related to physical or mental health or of a professional nature;

        **c.**  Any cosmetic or tonsorial service or treatment; or

    **2.**  The furnishing of or dispensing of drugs or medical, dental or surgical supplies or appliances.

    This exclusion shall not apply to any liability arising out of:

        **a.**  **Incidental Medical Malpractice Services**,

        **b.**  **Employment practice wrongful acts**; or

    **c.** The rendering or failing to render **first aid**.

**CC.** For liability arising out of or in connection with any transit authority, transit system, or public transportation system owned, operated, or regulated by any **insured**. This exclusion shall not apply to transit or public transportation systems operation over non-fixed routes, including, but not limited to, Dial-a-Ride, senior citizen transportation, or handicapped person transportation or to contingent liability coverage where such services are contracted;

**DD.** For injunctions, equitable relief, or any other form of relief other than the payment of monetary damages; or

**EE.** For liability arising out of or in connection with the operation of any school, owned or operated by **you**.

**FF.** For liability, however caused, arising directly or indirectly out of:

    **1.** War, including undeclared or civil war; or

    **2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

This exclusion does not apply to the use or threatened use of "terrorism".

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    **1.** A government;

    **2.** The civilian population of a country, state or community; or

    **3.** To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

**GG.** For liability or any other loss, cost or expense, including, but not limited to losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

    **1.** Any "fungus(i)", "molds(s)", mildew or yeast, or

    **2.** Any "spore(s)" or toxins created or produced by or emanating from such "fungus(i)", "mold(s)", mildew or yeast, or

    **3.** Any substance, vapor, gas, or other emission or organic or inorganic body substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

    **4.** Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that **bodily injury** or **property damage**, loss, cost or expense.

For the purpose of this exclusion, the following definitions are added to the policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter of on living organisms, and fungi that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**HH.** **1.** For liability for past, present or future **claims** arising in whole or in part, either directly or indirectly, out of the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, exposure to, ingestion of or testing for, lead whether or not the lead is or was at any time airborne as a particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion or found in any form whatsoever;

**2.** The costs of clean up or removal of lead or products and materials containing lead;

**3.** The costs of such actions as may be necessary to monitor, assess and evaluate the release or threat of same, or lead or products and material containing lead;

**4.** The cost of disposal of lead substances or the taking of such other action as may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result; or

**5.** The cost of compliance with any law or regulation regarding lead.

**II.** **1.** **Bodily injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, and/or any other type of injury, loss, cost, damage, or expense sustained by any person for the real or alleged emergence, contraction, aggravation or exacerbation of any form of silicosis or any other disease of the human body caused by, arising out of, or resulting from the manufacture, mining, use, sale, removal, or distribution by any person or organization of silica, silica products, silica fibers or silica dust, or the exposure to silica, silica products, silica fibers or silica dust; or

**2.** Any obligation of the **insured** to defend and/or indemnify any party because of damages arising out of such **bodily injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time caused by, arising out of, or resulting from the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to silica, silica products, silica fibers or silica dust.

**JJ.** For any **claim** or **suit** alleging or asserting that any act or omission violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information..

**KK.** For any **claim** or **suit** arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**LL.** If coverage for a **claim** or **suit** under this policy is in violation of any United States of America economic or trade sanctions, including but not limited, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that **claim** or **suit** will be null and void.

**MM.** For any **claim** or **suit** under any Uninsured Motorist, Underinsured Motorist, or No-Fault law, or any similar law, and to any sums **you** may be legally entitled to recover as damages from the owner or operator of any uninsured or underinsured **automobile** because of **bodily injury** and **property damage** sustained by any **insured**, caused by an **occurrence** and arising out of the ownership, maintenance, operation, use, **loading or unloading** of such **automobile**.

**NN.** For any liability which:

    **1.** is not covered by the **scheduled underlying insurance** by reason of an exclusion contained in or at any time added to such **scheduled underlying insurance**; or

    **2.** is in any way subject to a sublimit which is less than the limits of insurance of such **scheduled underlying insurance.**

**OO.** For any liability arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), or any amendment thereto, or any similar federal, state, or local law.

**PP.** For any **claim** or **suit** arising out of or associated with a lockout, strike, picket line, replacement or other similar actions in connection with labor disputes or labor negotiations. This exclusion shall not apply to a **claim** brought by an **employee(s)** alleging wrongful termination or **retaliation** as a result of strike activity or union involvement.

**QQ.** For any liability incurred by any **insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person.

**RR.** From any liability for failure to pay wages earned by an **employee**, including but not limited to any **claim** brought under the overtime compensation or minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. 201 et seq., or any state or local law governing the payment of overtime compensation or minimum wage. However, this exclusion does not apply to any **claim** brought pursuant to the Equal Pay Act, 29 U.S.C. s. 206 (d).

## SECTION VI.   GENERAL CONDITIONS

**A.   Appeals**

If **you** or **your** underlying insurers do not appeal a judgment in excess of **your** retained limit, **we** have the right to make such an appeal. If **we** elect to appeal, the cost incurred for the appeal will be at **our** expense and not included within **our** Limits of Insurance. **Our** liability on such an award or judgment shall not exceed **our** Limits of Insurance as stated in the Declarations.

**B.   Arbitration**

In the event of a disagreement as to the interpretation of this policy (except with regard to whether this policy is void or voidable), it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) Arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall, within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it. The two (2) arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire. If the Arbitrators are unable to agree upon an umpire, the selection of the umpire shall be submitted to the Judicial Arbitration and Mediation Services (hereinafter, "JAMS"). The umpire shall be selected in accordance with Rule 15 (as may be amended from time to time) of the JAMS Comprehensive Arbitration Rules and Procedures for the selection of a sole arbitrator.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire. Said hearings shall be held within 30 days of the selection of the umpire. The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles. The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud and gross misconduct by the Arbitrators. The award will be issued within 30 days of the close of the hearings. Each party shall bear expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and the arbitration.

The arbitration proceeding shall take place in the vicinity of the first Named Insured's mailing address as shown in the Declarations or such other place as may be mutually agreed by the first Named Insured and **us**. The procedural rules applicable to this arbitration shall, except as provided otherwise herein, be in accordance with the JAMS Comprehensive Arbitration Rules and Procedures.

**C.   Examination of Your Books and Records**

**We** may audit and examine **your** books and records as they relate to this Policy at any time during the Policy Period and for up to three (3) years after the expiration or termination of this policy.

**D.   Bankruptcy or Insolvency**

**Your** bankruptcy, insolvency or inability to pay, or the bankruptcy, insolvency or inability to pay of any of **your** underlying insurers will not relieve **us** from the payment of any **claim** or **suit** covered by this Policy.

But under no circumstances will such bankruptcy, insolvency, or inability to pay in any way increase **our** liability or require **us** to drop down or in any way replace **your retained limit** or assume any obligation associated with **your retained limit** or **scheduled underlying insurance**.

**E.   Cancellation/Change/Nonrenewal**

1.   If this Policy has been in effect for more than sixty (60) days, **we** may not cancel this Policy unless for non-payment of premium. **You** may cancel this Policy at any time, by surrendering the Policy to **us** or to any of **our** authorized brokers or by mailing to **us** written notice stating when thereafter the cancellation shall be effective. If **we** cancel this Policy because **you** have failed to pay a premium when due, **we** may cancel this Policy by mailing written notice of cancellation to **you** at the address shown in the Declarations starting when, not less than twenty (20) days thereafter, such cancellation shall be effective. Mailing such notice to **you** at **your** mailing address shown in the Declarations will be sufficient to prove cancellation.

2.   If this Policy has been in effect for less than sixty (60) days and is not a renewal, **we** may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least seventy-five (75) days before the effective date of cancellation if there has been:

   a.   A material misstatement or misrepresentation, or

   b.   Failure to comply with underwriting requirements established by **us**.

3.   The Policy Period will end on the day and hour stated in the cancellation/nonrenewal notice.

4.   If **we** cancel, the final premium will be calculated pro rata based on the time this Policy was in force. The final premium will not be less than the pro rata share of the Minimum Premium as shown in the Declarations.

5.   If **you** cancel, the earned premium shall be computed in accordance with the customary short rate table and procedure, which is subject to the annual Minimum Earned Premium.

6.   A premium adjustment will be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if **we** have not made or offered any refund due **you**. **Our** check or **our** representative's check, mailed or delivered, shall be sufficient tender of any refund due **you**.

7.   The first Named Insured, in the Declarations, will act on behalf of all other insureds with respect to the giving and receiving of notice of cancellation/change/nonrenewal and the receipt of any refund that may become payable under this Policy.

8. If **we** elect to renew this Policy and the renewal is subject to a premium increase of twenty-five percent (25%) or greater, or a reduction in Limits of Insurance, or a substantial reduction in coverage, then **we** shall mail written notice of the change(s) to the first Named Insured and **our** authorized broker (at the mailing address shown on the Policy) at least sixty (60) days before the expiration date of this Policy. **If we** fail to provide sixty (60) days notice, this Policy shall remain in effect for sixty (60) days after the date of mailing the notice or until the effective date of the replacement coverage is obtained by the first Named Insured, whichever occurs first. If the first Named Insured elects not to renew, and earned premium for the period of extension of the terminated Policy will be calculated pro rata at the lower of the current or previous year's rate. If the first Named Insured accepts the renewal, the premium increase, **if** any, and other changes, then such changes are effective the day following the expiration date of this current Policy.

9. **We** may nonrenew this Policy by giving written notice of nonrenewal to the first Named Insured and **our** authorized broker, (at the mailing address shown on this Policy) no less than ninety (90) days prior to the expiration date of the Policy. **If we** fail to mail or deliver the notice of nonrenewal, **we** will extend this existing Policy for an additional ninety (90) days. Notice of nonrenewal will not be required if: (a) **we** have offered renewal, (b) **you** have replaced coverage or (c) **you** have agreed in writing to replace coverage. If **we** provide such notice and extend this Policy for ninety (90) days or less, an additional notice of nonrenewal is not required.

**F.   Conformance to Statute**

To the extent a term or condition of this Policy conflicts with a statute of the state within which this Policy is issued, this Policy shall be amended to conform to the minimum requirement of the statute.

**G.   Duties in The Event of an Occurrence or Wrongful Act, Employment Practices Wrongful Act, or Employee Benefit Wrongful Act or Claim or Suit**

1. General Reporting Requirements

   a. **You** must notify **us** as soon as practicable of an **occurrence, wrongful act, employment practices wrongful act,** or **employment benefit wrongful act** which may result in a **claim** or **suit** under this Policy. To the extent possible, notice should include:

      i. How, when, and where the **occurrence, wrongful act, employment practices wrongful act,** or **employee benefit wrongful act** took place;

      ii. Names and addresses of any injured persons and witnesses; and

      iii. The nature and or location of any injury or damage arising out of the **occurrence,** loss arising out of the **wrongful act, employment practices wrongful act,** or **employment benefit wrongful act.**

   b. If a **claim** is made or **suit** is brought against **you** that is reasonably likely to involve this Policy, **you** must notify **us** in writing as soon as practicable.

   c. **You** and any other involved **insured** must:

      i. Cooperate with the underlying insurers;

      ii. Comply with the terms and conditions of the **underlying insurance;** and

      iii. Pursue all rights of contributions or indemnity against any person or organization who may be liable to **you** because of **bodily injury,** or **property damage, personal and advertising injury, wrongful act, employment practices wrongful act,** or **employment benefit wrongful act** under this Policy or any **underlying insurance.** This condition, however, shall not apply to the self insured retention of the **retained limit.**

  **d.** When **we** believe that a **claim** or **suit** may exceed the **retained limit**, **we** may join **you** and, **if** applicable, the underlying insurer in the investigation, settlement and defense of all **claims** and **suits** in connection with such **occurrence**, **wrongful act**, **employment practices wrongful act**, or **employment benefit wrongful act**. In such event, **we** and **you** will cooperate fully with each other.

**2.** Special Serious Claims Reporting Requirements

  **You** shall give **us** prompt written notice of all **occurrences**, **wrongful acts**, **employment practices wrongful acts**, or **employment benefit wrongful acts** for **claims** or **suits** of which **you** become aware which involve:

  **a.** A serious case where, in **your** judgment or the judgment of **your** defense counsel, the **claim** or **suit** is likely to exceed 50% of the **retained limit**;

  **b.** A demand or demands where the total of such demands is greater than 50% of the **retained limit**;

  **c.** Death;

  **d.** Paralysis, paraplegia, quadriplegia;

  **e.** Loss of eye(s) or limb(s);

  **f.** Spinal cord or brain injury;

  **g.** Sensory organ or nerve injury, or neurological deficit;

  **h.** Serious burns;

  **i.** Substantial disability or disfigurement; or

  **j.** Loss of work time of six months or more.

**3.** Such notice is to be sent with all pertinent facts as respect GENERAL CONDITIONS, paragraphs G.l. and 2. to:

  100 Summer Street
  Boston, MA 02110
  Attention: Claims Department

## H. First Named Insured

The **insured** first named in Item I. in the Declarations is authorized to act on behalf of all Named Insureds and other **insureds** with respect to the giving and receiving of notice of cancellation and to receiving any return premium that may become payable under this Policy. The **insured** first named in Item I. in the Declarations is responsible for the payment of all premiums, but the Named Insureds jointly and severally agree to make such premium payments in full if the **insured** first named in Item I. fails to pay the amount due within thirty (30) days after **we** give a written demand for payment to the **insured** first named in Item I.

## I. Inspection

**We** have the right, but are not obligated, to inspect **your** premises and operations at any time. **Our** inspections are not safety inspections. They relate only to the insurability of **your** premises and operations and the premiums to be charges. **We** may give **you** reports on the conditions **we** find. **We** may also recommend changes. **We** do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of **your employees** or the public. **We** do not warrant the health and safety conditions of **your** premises or operations or represent that **your** premises or operations comply with laws, regulations, codes or standards..

## J. Legal Actions Against Us

There will be no right of action against **us** under this insurance unless:

**1.** **You** have complied with all the terms and conditions of this Policy; and

    **2.**  The amount **you** owe has been determined with **our** consent or by actual trial and final judgment.

This insurance does not give anyone the right to add **us** as a defendant in an action against **you** to determine **your** liability.

**K.**   **Other Insurance**

If other valid and collectible insurance or group coverage under a **joint powers authority** applies to a **claim** or **suit** that is also covered by this Policy, and subject to SECTION III. LIMITS OF INSURANCE of this Policy, this Policy will apply excess of the **other insurance**, whether this **other insurance** is primary, excess, contingent, or issued on any other basis. This provision, however, will not apply if the **other insurance** is specifically written to be excess of this Policy.

**L.**   **Our Right of Approval**

**We** reserve the right to approve defense counsel for **claims** or **suits** likely to exceed **your retained limit.**

**M.**   **Policy Changes**

This Policy contains all the agreements between **you** and **us** concerning this insurance. The first Named Insured in the Declarations is authorized to make changes in this Policy with **our** written consent. This Policy can only be changed by a written endorsement **we** issue and make a part of this Policy.

Notice to any broker or knowledge possessed by a broker or any other person will not effect a waiver or change in any part of this Policy.

**N.**   **Policy Period**

The Policy Period commences on the effective date shown in the Declarations. The period ends on the earlier of either the expiration date or the effective date of cancellation of this Policy. If **you** became an **insured** under the Policy after the effective date, the Policy Period begins on the date **you**  became an **insured.**

**O.**   **Policy Territory**

This Policy applies to **occurrences, wrongful acts,** and **employment benefit wrongful acts** anywhere in the world, but only if a **claim** is made and a **suit** is brought for such **occurrence, wrongful act, employment practices wrongful act,** and **employment benefit wrongful act** in the United States of America.

**P.**   **Premium and Audit**

    **1.**  **We** will compute all premiums for this policy in accordance with our rules and rates.

    **2.**  If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional exposures and/or **insureds.**

The premium shown as the Total Advance Premium in item 5. A. of the Declarations is a deposit premium only. If the Policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Total Advance Premium, the first Named Insured will pay the difference to us, due and payable upon notice. Subject to the Annual Minimum Premium shown in Item 5. B. of the Declarations, if the earned premium is less than the Total Advance Premium, we will return the difference to the first Named Insured.

    **3.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. The first Named Insured shown on the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

**Q.**   **Separation of Insureds**

Except with respect to the Limits of Insurance Section of this Policy and any rights or duties specifically assigned to the first Named Insured designated in the Declarations, this insurance applies:

    **1.**  As if each Named Insured were the only Named Insured; and

    **2.**  Separately to each **insured** against whom a **claim** is made or **suit** brought.

**R.**  **Transfer of Your Rights of Recovery**

If **you** have rights to recover all or part of any payment **we** have made under this Policy, those rights are transferred to **us. You** must do nothing after such payment to impair these rights and **you** must help **us** enforce them.

Any recoveries shall be applied as follows:

    **1.**  Any person or organization, including **yours**, that has paid an amount in excess of the applicable limit of insurance of this policy will be reimbursed first;

    **2.**  **We** then will be reimbursed up to the amount **we** have paid; and

    **3.**  Lastly, any person or organization, including **yours** that has paid an amount over which this policy is excess is entitled to **claim** the remainder.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including **yours**, in the ratio of their respective recoveries as finally settled.

**S.**  **Transfers of Your Rights and Duties**

The interest of any **insured** is not assignable. **Your** rights and duties under this Policy may not be transferred without **our** written consent.

If **you** are declared legally bankrupt, **your** rights and duties will be transferred to **your** legal representative but only while acting within the scope of his duties as **your** legal representative. However, notice of cancellation sent to the first "Named Insured" designated in Item 1 of the Declaration and mailed to the address show in this policy will be sufficient notice to affect cancellation of this policy

**T.**  **Representation of Fraud**

By accepting this policy, **you** agree:

    **1.**  The statements in the Declarations are accurate and complete;

    **2.**  Those statements are based upon representation **you** made to **us**;

    **3.**  **We** have issued this policy in reliance upon **your** representation; and

    **4.**  This policy is void in any case of fraud by **you** as it relates to this policy or any **claim** or **suit** under this policy.

**U.**  **Service of Suit**

In the event of **our** failure to pay any amount claimed to be due hereunder, **we**, at **your** request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such **suit** may be made upon Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts 02110 or his or her representative, and that in any **suit** instituted against **us** upon this Policy, **we** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, **we** hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office, as **our** true and lawful attorney upon whom may be served any lawful process in any action, **suit**, or proceeding instituted by **you** or on **your** behalf or any beneficiary hereunder arising out of this Policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, **we** have caused this Policy to be signed by **our** President and Secretary and countersigned where required by law on the Declarations Page by **our** duly authorized representative.

Secretary                                          President

ENDORSEMENT # 001

**This endorsement, effective 12:01 AM** 07/01/2013

**Forms a part of policy no.:** 048883349

**Issued to:** STATE OF UTAH

**By:** LEXINGTON INSURANCE COMPANY

## CRISIS RESPONSE COVERAGE EXTENSION ENDORSEMENT

This endorsement modifies insurance provided by the policy:

● **CRISIS RESPONSE NOTIFICATION TELEPHONE NUMBER: 877-743-7669**

**THIS ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR "CRISIS RESPONSE COSTS" AND "CRISIS MANAGEMENT LOSS" IN THE EVENT OF A "CRISIS EVENT" AS DEFINED HEREIN. THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY. IF THIS ENDORSEMENT IS ATTACHED TO A CLAIMS-MADE POLICY, THIS ENDORSEMENT NEVERTHELESS REQUIRES THAT ALL OF THE CRITERIA SET FORTH IN SECTION I., SUBPARAGRAPHS B.1. THROUGH B.4., INCLUSIVE, BE MET.**

### SCHEDULE

| Crisis Response Coverage Extension | Limits of Insurance | |
|---|---|---|
| Crisis Response Aggregate Limit | $300,000 | |
| Each Crisis Response Costs Limit | $250,000 | Each "Crisis Event" |
| Each Crisis Management Loss Limit | $50,000 | Each "Crisis Event" |

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this endorsement, the policy is extended to provide "crisis response costs" and "crisis management loss" resulting from a "crisis event".

## SECTION I. - CRISIS RESPONSE COVERAGE EXTENSION

**A.** We will reimburse you or pay on your behalf reasonable and necessary "crisis response costs" and/or "crisis management loss" arising out of: (1) "bodily injury" or "property damage" for which coverage is provided under this policy, or (2) "imminent injury", but only with respect to a "crisis event" to which this insurance applies. The amount we will reimburse you or pay on your behalf for such "crisis response costs" and/or "crisis management loss" is limited as described in SECTION III - CRISIS RESPONSE LIMITS OF INSURANCE. No self-insured retention or deductible shall apply to this coverage extension endorsement.

**B.** We will reimburse you or pay on your behalf "crisis response costs" and/or "crisis management loss" arising out of a "crisis event" only if:

1. The "bodily injury" or "property damage" or "imminent injury" takes place in the "coverage territory"; and

2. The "bodily injury" or "property damage" or "imminent injury" commences to occur during the policy period, and

3. Such "crisis response costs" and/or "crisis management loss" did not arise out of any fact, circumstance, pre-existing condition, situation, "bodily injury", "property damage", or "imminent injury" that you, prior to the inception date of this policy, knew, or reasonably should have known, could lead to, cause or result in such "crisis response costs" and/or "crisis management loss", and

4.  Such "crisis response costs" and/or "crisis management loss" are incurred within thirty (30) days after the commencement date of the "crisis event".  The end of the policy period will not cut short this thirty (30) day period.

## SECTION II. - EXCLUSIONS

The exclusions of the policy apply to this endorsement, including, but not limited to, any exclusion which applies to workers compensation or any similar law.  However, the following additional exclusions applicable to this endorsement supersede any similar exclusions in the policy.

This coverage extension does not apply to:

### Newly acquired or merged entities

"Crisis response costs" or "crisis management loss" resulting from "bodily injury" or "property damage" or "imminent injury" that occurred prior to the date you acquired or merged with any other entity.

### Infectious Diseases or Illnesses

"Crisis response costs" or "crisis management loss" arising out of infectious diseases or illnesses caused by any bacterium, virus, or fungus.  However, this exclusion does not include, food-borne illnesses or defective vaccines.

## SECTION III. - CRISIS RESPONSE LIMITS OF INSURANCE

A.  The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for "crisis response costs" and "crisis management loss" regardless of the number of Insureds, "crisis events", or "affected persons".

B.  The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all "crisis response costs" and "crisis management loss" under this endorsement.

C.  Subject to Paragraph **B.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all "crisis response costs" arising out of any one "crisis event".

D.  Subject to Paragraph **B.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all "crisis management loss" arising out of any one "crisis event".

All "crisis events" or all related or interrelated "crisis events" will be deemed to be one "crisis event".

## SECTION IV. - DEFINITIONS

The definitions of the policy apply to this endorsement.  However, the following additional definitions applicable to this endorsement supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance.  Other words and phrases that appear in quotation marks have special meaning as follows:

A.  "Affected persons" means those individuals who suffer direct "bodily injury" or "property damage", or directly experience "imminent injury", including such individuals immediate family members.

B.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

C.  "Coverage territory" means the United States of America, including its territories and possessions, Puerto Rico and Canada.

If coverage for "crisis response costs" or "crisis management loss" under this endorsement is in violation of any United States of America's economic or trade sanction, including, but not limited to, sanctions administered and enforced by the U.S. Treasury  Department' s Office of Foreign

Assets Control ("OFAC") then coverage for such "crisis response costs" or "crisis management loss" shall be null and void.

**D.** "Crisis event" means:

    **1.** An emergency situation including, but not limited to, a manmade disaster, such as arson, a bombing, the taking of hostages, a mass shooting, terrorism (if covered under the policy only), intentional contamination of food, drink, or pharmaceuticals or the actual or alleged mishandling of a natural disaster, that results in covered "bodily injury", "property damage" or "imminent injury" to any person, and

    **2.** Such emergency situation has been associated with or may reasonably be associated with significant adverse regional or national news media coverage.

**E.** "Crisis management firm" means a public relations firm or crisis management firm, assigned or approved by us in writing, that is hired by you to perform services of the type covered under "crisis management loss" in connection with a "crisis event".

**F.** "Crisis management loss" means reasonable and necessary fees and expenses charged by a "crisis management firm" or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees.

**G.** "Crisis response costs" means:

    **1.** reasonable and necessary "emergency transport expenses", "emergency psychology expenses", funeral expenses, travel expenses, and temporary living expenses incurred by you to provide relief and/or support to "affected persons", and

    **2.** expenses incurred by you to secure the scene of a "crisis event".

"Crisis response costs" shall not include "defense costs" or "crisis management loss".

**H.** "Defense costs" means legal fees and expenses incurred by you for legal advice or services sought in anticipation of, or upon actual receipt of, a claim alleging liability and seeking damages for "bodily injury", "property damage" or "imminent injury".

**I.** "Emergency transport expenses" means reasonable and necessary emergency transport expenses, occurring within 24-hours after a "crisis event", to transport an "affected person" sustaining "bodily injury" in a "crisis event" to a medical treatment facility.

**J.** "Emergency psychology expenses" means reasonable and necessary expenses for psychology or counseling services provided to "affected persons" and incurred within the first fourteen (14) days after a "crisis event". This does not include the costs or expenses of any medications or hospitalizations. Such psychology or counseling services must be approved by the "crisis management firm".

**K.** "Imminent injury" means the actual and immediate threat of "bodily injury" or "property damage".

**L.** "Property damage" means:

    **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **2.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "crisis event" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

## SECTION V. - CONDITIONS

The general and/or common conditions of the policy apply to this endorsement. However, the following conditions applicable to this endorsement supersede any similar conditions in the policy to the contrary.

**A.  Insured's Duties in the Event of a "Crisis Event"**

1.  You must see to it that we are notified by telephone within twenty-four (24) hours of a "crisis event" which may result in "crisis response costs" or "crisis management loss". The call must be made to 877-743-7669. If necessary, we will provide you with an approved "crisis management firm" unless we agree to accept a "crisis management firm" that you have selected.

2.  Thereafter you must provide written notice, as soon as practicable. To the extent possible, this written notice should include:

    a.  How, when and where the "crisis event" took place;

    b.  The names and addresses of any "affected persons" and witnesses; and

    c.  The nature and location of any injury or damage arising out of the "crisis event".

3.  If reimbursement is sought directly by you, you must submit a claim for reimbursement of "crisis response costs" and "crisis management loss" within ninety (90) days after incurring such "crisis response costs" or "crisis management loss". Such claim(s) must include invoices and/or receipts supporting such "crisis response costs" or "crisis management loss" for each and every expense in excess of fifty (50) dollars.

4.  Written notice and claim submission as required in Paragraphs **1.** and **2.** of this section, respectively, shall be mailed or delivered to:

    Lexington Insurance Company
    Casualty Claim Department
    100 Summer Street
    Boston, MA  02110

**B.  Anti-Stacking Provision**

If "crisis response costs" and/or "crisis management loss" provided by this coverage extension endorsement are also provided by any other insurance issued to you by us or any of our affiliated companies (whether or not such costs or loss are referred to using these same terms), the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this coverage extension endorsement.

All other terms and conditions of the policy remain the same.

_David Bresnahan_
**Authorized Representative**

ENDORSEMENT # 002

This endorsement, effective 12:01 AM 07/01/2013

Forms a part of policy no.: 048883349

Issued to: STATE OF UTAH

By: LEXINGTON INSURANCE COMPANY

## ACT OF TERRORISM RETAINED LIMITS ENDORSEMENT

This endorsement modifies insurance provided under the following:

### PUBLIC ENTITIES EXCESS LIABILITY POLICY

SCHEDULE

Act of Terrorism Self Insured Retention: $1,000,000

Any one **occurrence** or **wrongful act** or **employment practices wrongful act** or **employment benefit wrongful act** or series of continuous, repeated, or related **occurrences** or **wrongful acts** or **employment practices wrongful acts** or **employment benefit wrongful acts**

Act of Terrorism Premium: $7,104

Notwithstanding any other provision of the policy to the contrary, **if** liability for a **claim** or **suit** under this policy arises out of **terrorism**, then all of the following provisions apply to such **claim** or **suit**:

1. **We** will be liable only for that portion of the damages in excess of the greater of either:

   a. The total of the applicable limits of the **underlying insurance** providing coverage to the **insured**, but only to the extent that coverage under such policies is provided for **terrorism**; or

   b. The amount shown in the above Schedule as the Act of Terrorism Self Insured Retention;

   and then up to an amount not exceeding:

   a. the Each Occurrence Limit, subject to the remaining Bodily Injury, Property Damage and Personal and Advertising Injury Aggregate Limit, or the Automobile Each Occurrence Limit, **if** the **insured** is legally liable pursuant to Insuring Agreement A.1.,

   b. the Each Wrongful Act Limit, subject to the remaining Error and Omissions Aggregate Limit **if** the **insured** is legally liable pursuant to Insuring Agreement A.2.,

   c. the Each Employment Practices Wrongful Act Limit, subject to the remaining Employment Practices Aggregate Limit **if** the **insured** is legally liable pursuant to Insuring Agreement A.3., or

   d. the Each Employment Benefit Wrongful Act Limit, subject to the remaining Employment Benefit Aggregate Limit **if** the **insured** is legally liable pursuant to Insuring Agreement A.4.,

   whichever is applicable.

2. Regardless of any provision in this policy or the **underlying insurance** to the contrary, **defense expenses** do not apply against or reduce:

    a. the Act of Terrorism Self Insured Retention in the above Schedule, or

    b. The total of the applicable limits of the **underlying insurance** providing coverage to the **insured**.

3. Notwithstanding any other provision of the policy to the contrary, **we** will not be obligated to assume charge of the investigation, settlement or defense of any **claim** made, **suit** brought or proceeding instituted against the **insured** arising out of **terrorism**. **We** will, however, have the right and shall be given the opportunity to participate in the defense and trial of any **claims**, **suits** or proceedings relative to any **claim** which, in **our** opinion, may create liability on **our** part under the terms of this policy. If **we** exercise such right, **we** will do so at **our** own expense.

4. The following definitions apply to this endorsement:

    a. **Defense expenses** means any payment allocated to a specific loss, **claim** or **suit** for its investigation, settlement or defense, including, but not limited to:

        i. Attorney's fees and all other investigation, loss adjustment, and litigation expenses;

        ii. Premiums on bonds to release attachments;

        iii. Premiums on appeal bonds required by law to appeal any **claim** or **suit**;

        iv. Costs taxed against the **insured** in any **claim** or **suit**;

        v. Pre-judgment interest awarded against the **insured**; and

        vi. Interest that accrues after entry of judgment.

    b. **Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in an connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

        i. A government;

        ii. The civilian population of a country, state or community; or

        iii. To disrupt the economy of a country, state or community.

    So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, **terrorism** includes a certified act of terrorism defined by Section 102. Definitions, of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy remain the same.

_David Bresnahan_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT #  003

This endorsement, effective 12:01 AM 07/01/2013

Forms a part of policy no.:  048883349

Issued to: STATE OF UTAH

By: LEXINGTON  INSURANCE COMPANY

---

### DELETION OF EXCLUSION EE.

This endorsement modifies insurance provided by the policy:

SECTION V. EXCLUSIONS, exclusion EE. is deleted in its' entirety.

All other terms and conditions remain unchanged.

*David Bresnahan*

**Authorized Representative OR**
**Countersignature (In states where applicable)**

## ENDORSEMENT #  004

**This endorsement, effective** 12:01 AM 07/01/2013

**Forms a part of policy no.:**  048883349

**Issued to:** STATE OF UTAH

**By:** LEXINGTON  INSURANCE COMPANY

---

### FUNGUS/MOLD EXCLUSION WITH LIMITED EXCEPTION

This endorsement modifies insurance provided by the policy:

This insurance does not apply to any **personal injury**, **property damage**, **advertising injury**, claim, loss, suit, injury, damage, cost or expense, including, but not limited to, losses, costs or expenses related to, arising from, or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

a.      Any **fungus(i)**, **mold(s)**, mildew or yeast, or **fungus(i)**, **mold(s)**, mildew or yeast, or

b.      Any **spore(s)** or toxins created or produced by or emanating from such **fungus(i)**, **mold(s)**, mildew or yeast, or

c.      Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any **fungus(i)**, **mold(s)**, mildew or yeast, or **spore(s)**  or toxins created or produced by or emanating from such **fungus(i)**, **mold(s)**, mildew or yeast, or

d.      Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any **fungus(i)**, **mold(s)**, mildew, yeast, or **spore(s)** or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury, damage, cost or expense.

For the purpose of this exclusion, the following definitions are added to the policy:

a.      **Fungus(i)** includes, but not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including **mold(s)**, rusts, mildews, smuts and mushrooms.

b.      **Mold(s)** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce **mold(s).**

c.      **Spore(s)** means any dormant or reproductive body produced by or arising or emanating out of any **fungus(i)**, **mold(s)**, mildew, plants, organisms or microorganisms.

However, this exclusion does not apply to **personal injury** or **property damage** arising out of **mold(s)** or **fungus(i)** which are, or are on, in, or part of, any of the **Insured's** goods or products that are intended to be consumed as a food, beverage, or medicine.

Under no circumstances shall the exception stated in the preceding paragraph be construed to provide coverage otherwise excluded by the Avian Influenza Viruses Exclusion attached

**ENDORSEMENT #  004**
(Continued)

to and forming part of this policy.

All other terms and conditions of the policy remain the same.

_David Bresnahan_

_____

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 005

This endorsement, effective 12:01 AM 07/01/2013

Forms a part of policy no.:  048883349

Issued to: STATE OF UTAH

By: LEXINGTON INSURANCE COMPANY

## NAMED INSURED AMENDMENT

In consideration of the premium charged, it is understood and agreed that Item 1 of the Policy Declarations  -- Named Insured -- is amended to read as follows:

The State of Utah, including any office, department, agency, authority, commission, board, institution, hospital, college, charter school, university or other instrumentality of the State as is now or hereafter constituted.

Included as insures are:
Utah Health Department;
Heber Valley Railroad;
South Summit Recreation Center;
All Utah public schools, school districts and public educational service centers.

Entities specifically EXCLUDED are:
Utah State Retirement Board;
Utah Transit Authority;
Utah Workers Compensation Fund

*David Bresnahan*

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 006

**This endorsement, effective 12:01 AM 07/01/2013**

**Forms a part of policy no.:** 048883349

**Issued to:** STATE OF UTAH

**By:** LEXINGTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED REQUIRED BY WRITTEN CONTRACT

**A. Section II - Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

**B.** The insurance provided to the above described additional insured under this endorsement is limited as follows:

1. COVERAGE A BODILY INJURY AND PROPERTY DAMAGE (Section I - Coverages) only.

2. The person or organization is only an additional insured with respect to liability arising out of "your work" or "your product" for that additional insured.

3. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance stated in the Declarations under Item 3. Limits of Insurance pertaining to the coverage provided herein.

4. The insurance provided to such an additional insured does not apply to "bodily injury" or "property damage" arising out of an architect's, engineer's or surveyor's rendering of or failure to render any professional services including:

   i The preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

   ii Supervisory, inspection, architectural or engineering activities.

5. This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" included in the "products-completed operatons hazard" unless you are required to provide such coverage by written contract or written agreement and then only for the period of time required by the written contract or written agreement and in no event beyond the expiration date of the policy.

Includes copyrighted information of the Insurance Services Offices, Inc. with its permission.  All rights reserved.

**6.** Any coverage provided by this endorsement to an additional insured shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract or written agreement specifically requires that this insurance apply on a primary or non-contributory basis.

**C.** Subparagraph (1)(a) of the Pollution exclusion paragraph 2.f., Exclusions of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) does not apply to you if the "bodily injury" or "property damage" arises out of "your work" or "your product" performed on premises which are owned or rented by the additional insured at the time "your work" or "your product" is performed.

**D.** In accordance with the terms and conditions of the policy and as more fully explained in the policy, as soon as practicable, each additional insured must give us prompt notice of any "occurrence" which may result in a claim, forward all legal papers to us, cooperate in the defense of any actions, and otherwise comply with all of the policy's terms and conditions.

_David Bresnahan_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

Includes copyrighted information of the Insurance Services Offices, Inc. with its permission.  All rights reserved.

## ENDORSEMENT # 007

This endorsement, effective 12:01 AM: 07/01/2013

Forms a part of policy no: 048883349

Issued to: **STATE OF UTAH**

By: **LEXINGTON INSURANCE COMPANY**

### SPECIAL EXCESS LIABILITY POLICY FOR PUBLIC ENTITIES

### <u>HEALTHCARE EXCLUSION ENDORSEMENT</u>
### (With Stated Exceptions)

This Policy is amended as follows:

**SECTION V. EXCLUSIONS**, Paragraph BB. is deleted in its entirety and replaced by the following:

CC.   For liability arising out of, or in connection with, the operation of any hospital, clinic, or health care facility, owned or operated by the **insured**, including, but not limited to:

    1.   The rendering or failure to render:

        a.   Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

        b.   Any service or treatment related to physical or mental health or of a professional nature;

        c.   Any cosmetic or tonsorial service or treatment; or

    2.   The furnishing of or dispensing of drugs or medical, dental or surgical supplies or appliances.

This exclusion shall not apply to any liability arising out of:

    a.   Occupational physical examinations, non-clinic nursing services or **your employees** who are nurses, paramedics, emergency medical technicians, physical therapists, speech therapists, speech pathologists, nutritionists, psychologists, audiologists, medical examiners or coroners;

    b.   **Employment practice liability;**

    c.   **First aid** to any person; or

    d.   Nursing services at any clinic that does not perform invasive surgery of any kind.

All other terms, definitions, conditions, and exclusions of this policy remain unchanged.

_David Bresnahan_

Authorized Representative
or Countersignature (Where Applicable)

ENDORSEMENT #   008

This endorsement, effective 12:01 AM 07/01/2013

Forms a part of policy no.:   048883349

Issued to: STATE OF UTAH

By: LEXINGTON INSURANCE COMPANY

### EXCLUSION FOR IMMUNITY GRANTED TO ANY INSURED

This endorsement modifies insurance provided under the following:

The following exclusion is added to **Section V. Exclusions:**

(**We** will not defend or pay under this Policy for **claims** or **suits** against **you**:)

For **bodily injury**, **property damage**, **personal and advertising injury**, a **wrongful act**, an **employment practices wrongful act**, or an **employment benefit wrongful act**, or any other loss, cost, or damage or expense: (i) for which immunity is granted to any insured pursuant to the "Governmental Immunity Act of Utah", Utah Code Ann. § 63G-7-101, et seq., or (ii) for which liability is limited under Utah Code Ann. § 63G-7-604, as may be amended from time to time, with respect to any **claim** or suit brought against any insured.

Manuscript

*David Bresnahan*

**Authorized Representative OR**
**Countersignature (In states where applicable)**

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)


**MORETON**
& COMPANY
TRUSTED SINCE 1910

# New/Renewal Policy Checklist

**Named Insured:** State of Utah

**Client Code:** STATEUTA3

**Policy Number:** 048883349

**Policy Coverage Type:** EXL

**Today's Date:** 6/29/2013

**Policy Period:** 07/01/2013 to 07/01/2014

Please use the **F11** key to navigate through the form.

---

### Binding Checklist

| | | | |
|---|---|---|---|
| Authorized by insured Per Rob Callister | | to bind coverage | Date: 6/11/13 |
| Carrier: CRC: Lexington | | Underwriter Name: Joe LaRocca / Susan Chase | |
| Binder order to carrier? | x Yes ☐ No ☐ N/A | Date: 6/11/13 | |
| Authority to issue binder? | x Yes ☐ No ☐ N/A | | |
| Binder & letter/email to insured? | x Yes ☐ No ☐ N/A | Date: 6/26 Rob Delivered | |
| Authority to sign certificate? | x Yes ☐ No ☐ N/A | | |
| Declined coverage confirmed back to insured in binder letter? | ☐ Yes ☐ No x N/A | Date: | |
| Auto ID cards sent? | ☐ Yes ☐ No x N/A | Date | |
| Update additional policy information screen? | x Yes ☐ No ☐ N/A | | |
| Certificates issued? | x Yes ☐ No ☐ N/A | Date: | |
| Short-term policy? | ☐ Yes x No ☐ N/A | (If yes, create diary follow-up) | |
| Surplus lines wording stamped on binder? | x Yes ☐ No ☐ N/A | | |
| Surplus lines document filed? | x Yes ☐ No ☐ N/A | Date: by CRC; filing fee only | |
| SLF & SLT added in Pol Multi transaction screen? | x Yes ☐ No ☐ N/A | | |
| Invoiced?  x Yes ☐ No  ☐ N/A  Date: 6/28/13   Amount: $719,377.45  Commission %: 10%_  Invoice Number:  168826 | | | |
| Provided a copy of wholesaler invoice to accounting dept.? | x Yes ☐ No ☐ N/A | Date: | |
| Finance agreement in place?  ☐ Yes  x No  ☐ N/A | | Installments: n/a | |
| Create task in WorkSmart to follow up for audit | ☐ Yes ☐ No x N/A | (Due 60 days after expiration date) | |
| Contacts updated? | ☐ Yes ☐ No x N/A | Date: | |
| Client/policy note updated? | ☐ Yes ☐ No x N/A | Date: | |
| Was CA Lic.#. indicated on correspondence for CA exposures? ☐ Yes ☐ No x N/A | | | |

---

### Policy Setup Checklist

| | |
|---|---|
| ☐ Exposure Analysis completed | ☐ Surplus Lines stamp shown on policy, if applicable |
| ☐ Policy checked against Sagitta | ☐ Close open task for Binder & New/Renewal policy |
| ☐ Expiring policy number referenced on declarations page | ☐ Complete Additional Info button to show Date Policy Rcvd/Date Checked/By Whom |
| ☐ All forms listed on declarations attached to policy | |
| ☐ Renewal policy number correct in Sagitta | ☐ Update Umbrella underlying coverage in Sagitta |
| ☐ Premium/commission match what was quoted/invoiced | x  Archive prior year certificates |
| x  Billing Method Correct in Sagitta (Agency vs. Co. Bill) | |

From:    Rob Callister
Date:    6/18/2013 11:00:08 AM
To:    jlarocca@crcins.com;
Cc:    Jane Wilson;
Attachments: image001.jpg

Joe:  I had a meeting with the State this morning and just wanted to verify something with you re the named insured since we are moving back from Star to Lex.  We show the named insured as follows:

*The State of Utah, including any office, department, agency, authority, commission, board, institution, hospital, college, charter school, university or other instrumentality of the State as is now or hereafter constituted.*

*Included as insured are:*
*Utah Health Department*
*Heber Valley Railroad*
*South Summit Recreation Center*
*All Utah public schools, school districts and public educational service centers.*

*Entities specifically <u>EXCLUDED</u> are:*
*Utah State Retirement Board*
*Utah Transit Authority*
*Utah Workers Compensation Fund*

Please let me know by return e-mail that this is still the same with Lex.


Thanks, Rob


**Robert Callister, CPCU**
Senior Vice President | Moreton & Company
Direct: 801-715-7009 | rob@moreton.com
709 E. South Temple, Salt Lake City, Utah 84102
CA License 0522220

 cid:image001.jpg@01CD5AC5.E4620A60

From:    Susan Chase (AL)
Date:    6/27/2013 7:56:32 AM
To:      Jane Wilson;
Cc:
Attachments: Invoice#1152507.PDF; Binder - UMB_3399369.PDF

Jane,
Attached is revised binder and invoice for the above captioned insured effective 7/1/2013 without SL taxes.

Susan

Susan Chase
CRC Insurance Services, Inc.
Phone: 205-414-2439
Email: schase@crcins.com
"Thanks be to God who gives us victory through Christ." 1 Corinthians 15:17

NOTICE:  You cannot bind, alter or cancel coverage without speaking to an authorized representative of CRC/Southern Cross. Coverage cannot be bound without written confirmation from an authorized representative of CRC/Southern Cross.  This email and any files transmitted with it are not encrypted and may contain privileged or other confidential information and is intended solely for the use of the individual or entity to whom they are addressed.  If you are not the intended recipient or entity, or believe that you may have received this email in error, please reply to the sender indicating that fact and delete the copy you received. In addition, you should not print, copy, retransmit, disseminate, or otherwise use this information.  Thank you.

CRC Insurance Services, Inc.
Lockbox Address:
PO Box 890598
Charlotte, NC 28289-0598

| Bill To: 10088 | Insured: 4247749 | Agent: 10088 | CSR: SCHASE | Acct Exc: JLarocca |
|---|---|---|---|---|

Moreton & Company - Salt Lake City
P. O. Box 58139
Salt Lake City, UT 84158

Attn: Jane Wilson

Submission No: 3399369

**I N V O I C E**

| Invoice Date: | Invoice Number: | Page: |
|---|---|---|
| 6/27/2013 | 1152507 | 1 |

| Insured: State of Utah | INVOICE PAYMENT |
|---|---|
| DBA : | Payment Due On: 7/21/2013 |

| Insurance Company: | Policy Number: | Effective: | Expires: |
|---|---|---|---|
| Lexington Insurance Company - Boston | 048883349  (Renw: SISCPEL01814812) | 7/1/2013 | 7/1/2014 |

| Type Of Transaction | Line Of Business | CompID | Amount | Comm($) | Net Due |
|---|---|---|---|---|---|
| Renewal  Business | EXCESS LIABILITY | A0009 | $717,500.00 | $71,750.00 | $645,750.00 |
| Policy Fee | | CRCAL | $800.00 | | $800.00 |
| Stamping Office Fee | | UTSLT | $1,077.45 | | $1,077.45 |

| Amount  Invoiced: | Comm % | Commission | Invoice Amount |
|---|---|---|---|
| $719,377.45 | 10 | $71,750.00 | $647,627.45 |

Note:

SCHASE

**CRC**

PO Box 59689  Birmingham, AL 35259-9689  Phone: (800) 824-1709 Fax: (205) 879-3739

# CONFIRMATION OF COVERAGE BOUND
## (BINDER CONFIRMATION)

| | | | |
|---|---|---|---|
| **Date:** | Jun 27, 2013 | | |
| **Attn:** | Jane Wilson | **Phone #:** | (801) 715-7112 |
| **Agency:** | Moreton & Company - Salt Lake City | **Fax #:** | (801) 531-6117 |
| **From:** | Susan Chase for Joe LaRocca | **Binder Confirmation Expiration:** | 10/1/2013 |

---

**We are pleased to confirm the following coverage that has been bound by the carrier shown below. Please note that this binder confirmation is based on the coverage, terms and conditions listed below, which may be different from those requested in your original submission. As you are the representative of the Insured, it is incumbent upon you to review the terms of this binder confirmation carefully with your Insured, and reconcile any differences from the terms requested in the original submission. CRC Insurance Services, Inc. disclaims any responsibility for your failure to reconcile with the Insured any differences between the terms confirmed below and those terms originally requested.**

**This coverage may not be bound without a fully executed brokerage agreement.**

---

| | | | |
|---|---|---|---|
| **Insured Name:** | State of Utah | **ID#:** | 3399369 - |
| **Mailing Address:** | 5120 State Office Building | | |
| | Salt Lake City, UT 84114 | | |
| **Physical Address:** | 5120 State Office Building | | |
| | Salt Lake City, UT 84114 | | |
| **Description:** | Municipality / Government | | |
| **Carrier:** | Lexington Insurance Company - Boston  NAIC: 19437 | | |
| **Coverage:** | **PUBLIC ENTITY SELECT** | **Policy Number:** | 048883349 |
| **Effective:** | 7/1/2013 | **Expiration:** | 7/1/2014 |

**Limits of Liability:**

| | |
|---|---|
| $20,000,000 | BI, PD & Personal and Advertising Injury Aggregate Limit |
| $10,000,000 | Each Occurrence |
| . | |
| $10,000,000 | Automobile Each Occurrence Limit |
| . | |
| $20,000,000 | Error & Omissions Aggregate Limit |
| $10,000,000 | Each Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Practices Aggreage Limit |
| $10,000,000 | Each Employment Practices Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Benefit Aggregate Limit |
| $10,000,000 | Each Employment Benefit Wrongful Act Limit |
| . | |
| Defense: | Inside the Policy limit and erode the applicable Retained Limit |
| | |
| SIR: | $1,000,000   Each Occurrence and Wrongful Act Retention or Combination of Occurrence and Wrongful Act |

| | |
|---|---|
| **Policy Premium:** | $717,500.00 |
| **TRIPRA Premium:** | INCLUDED |
| **Policy Fee** | $800.00 |
| **Stamping Office Fee:** | $1,077.45 |
| **TOTAL :** | $719,377.45 |
| **Commission:** 10% | **MEP:** 25% |

25% Minimum Earned Premium
100% Minimum & Deposit

SUBJECT TO:
Prior to binding, please provide the following:
1) Completed and signed broker responsible for Surplus Lines Filing Agreement


Attach:
· Crisis Response Coverage Extension Endorsement (LX8703 05/11)
The Crisis Response Coverage Extension Endorsement is included under this policy at no additional premium charge from Lexington Insurance Company. This endorsement can provide coverage for public relations expenses and media management services for the purpose of maintaining and restoring public confidence in you in the event of a man-made
emergency situation that involves bodily injury or property damage to multiple persons and results in significant adverse regional or national news media coverage. The endorsement provides up to $50,000 per crisis event for public relations expense and media management services, and up to a separate $250,000 per crisis event to fund certain reasonable and necessary direct costs of the initial crisis response. These limits of insurance are subject to a maximum Aggregate Limit of $300,000. The limits of insurance provided under the endorsement are separate and do not erode the overall limits of the policy.  In case of a crisis event, you must contact us within twenty-four (24) hours at 877-743- 7669. THIS PHONE NUMBER IS ONLY FOR REPORTING A CRISIS EVENT AND IS NOT INTENDED FOR ANY OTHER CLAIM REPORTING OR GENERAL INQUIRY.
· Act of Terrorism Retained Limits Endorsement (LX8369 11/07)
· Additional Insured as Required by an Insured Contract
· Named Insured Amendatory Endorsement, Manuscript
· School Endorsement, Manuscript
· Healthcare Exclusion Endorsement (With Stated Exceptions), Manuscript
· Fungus/Mold Exclusion w/ Limited Exception, Manuscript
· Exclusion for Immunity Granted to Any Insured, Manuscript


Joe LaRocca

3399369

**CONFIDENTIAL**

From: Jane Wilson
Date: 6/24/2013 6:42:47 PM
To: 'Susan Chase (AL)';
Cc:
Attachments:

Susan, I have discussed this with Rob and as we review the file this policy has not been subject to taxes/fees in the past. We were given direction by the State in the past that they are not subject to taxes. We presented the proposal based on that information and were not advised by the State that that is no longer the case. The code mentioned is a general statement for the public; it does not reflect the tax status of the State itself.

Please amend the invoice to include the stamping fee but not the taxes. Thanks for your help on this.

*Jane*

Jane E. Wilson, *CIC, ARM*

Account Manager
MORETON & COMPANY
709 East South Temple | Salt Lake City, UT 84102
Direct: 801-715-7112 | Fax: 801-531-6117
CA License Number: 0522220
Email: jwilson@moreton.com | www.moreton.com
Fred A. Moreton & Company dba Fred A. Moreton & Company Insurance Agency

-----Original Message-----
From: Susan Chase (AL) [mailto:schase@crcins.com]
Sent: Monday, June 24, 2013 2:05 PM
To: Jane Wilson
Cc: Rob Callister
Subject: RE: State of Utah - Pol# 048883349 [SYS*REF#3399369]

Jane/Rob,
Attached is revised binder and invoice showing taxes. Per the Utah State Tax department, The State of Utah is required to pay state taxes. The only entities that are exempt are ocean marine and higher education. They advised this can be found under Utah Code Section 31A-3-301.

I have not seen taxes paid by the State in a long time, so this must have changed here recently.

Have a wonderful day!!!
Susan J. Chase
CRC Insurance Services, Inc.
P: 205-414-2439
F: 205-986-2657
E: SCHASE@CRCINS.COM
Live Simply, Love Generously, Care Deeply, Speak Kindly, Leave the Rest to GOD.

NOTICE: You cannot bind, alter or cancel coverage without speaking to an authorized representative of CRC/Southern Cross. Coverage cannot be bound without written confirmation from an authorized representative of CRC/Southern Cross. This email and any files transmitted with it are not encrypted and may contain privileged or other confidential information and is intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended

recipient or entity, or believe that you may have received this email in error, please reply to the sender indicating that fact and delete the copy you received. In addition, you should not print, copy, retransmit, disseminate, or otherwise use this information.  Thank you.

State of Utah – Po#: 048883349 [SYS*REF#3399369] 02/08/21 w/rev Inv/Binder (?)

From: Susan Chase (AL)
Date: 6/24/2013 2:05:29 PM
To: Jane Wilson;
Cc: Rob Callister;
Attachments: Invoice#1151499.PDF; Binder - UMB_3399369.PDF

---

Jane/Rob,
Attached is revised binder and invoice showing taxes. Per the Utah State Tax department, The State of Utah is required to pay state taxes. The only entities that are exempt are ocean marine and higher education. They advised this can be found under Utah Code Section 31A-3-301.

I have not seen taxes paid by the State in a long time, so this must have changed here recently.

Have a wonderful day!!!
Susan J. Chase
CRC Insurance Services, Inc.
P: 205-414-2439
F: 205-986-2657
E: SCHASE@CRCINS.COM
Live Simply, Love Generously, Care Deeply, Speak Kindly, Leave the Rest to GOD.

NOTICE: You cannot bind, alter or cancel coverage without speaking to an authorized representative of CRC/Southern Cross. Coverage cannot be bound without written confirmation from an authorized representative of CRC/Southern Cross. This email and any files transmitted with it are not encrypted and may contain privileged or other confidential information and is intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient or entity, or believe that you may have received this email in error, please reply to the sender indicating that fact and delete the copy you received. In addition, you should not print, copy, retransmit, disseminate, or otherwise use this information. Thank you.

CRC Insurance Services, Inc.
Lockbox Address:
PO Box 890598
Charlotte, NC 28289-0598

| Bill To: 10088 | Insured: 4247749 | Agent: 10088 | CSR: SCHASE | Acct Exc: JLarocca |
|---|---|---|---|---|

Moreton & Company - Salt Lake City          Attn: Jane Wilson
P. O. Box 58139
Salt Lake City, UT 84158                     Submission No:   3399369

# INVOICE

| Invoice Date: | Invoice Number: | Page: |
|---|---|---|
| 6/24/2013 | 1151499 | 1 |

| Insured: State of Utah | INVOICE PAYMENT |
|---|---|
| DBA : | Payment Due On:  7/21/2013 |

| Insurance Company: | Policy Number: | Effective: | Expires: |
|---|---|---|---|
| Lexington Insurance Company - Boston | 048883349  (Renw: SISCPEL01814812) | 7/1/2013 | 7/1/2014 |

| Type Of Transaction | Line Of Business | CompID | Amount | Comm($) | Net Due |
|---|---|---|---|---|---|
| Renewal Business | EXCESS LIABILITY | A0009 | $717,500.00 | $71,750.00 | $645,750.00 |
| Policy Fee | | CRCAL | $800.00 | | $800.00 |
| Surplus Lines Tax | | UTSLT | $30,527.75 | | $30,527.75 |
| Stamping Office Fee | | UTSLT | $1,077.45 | | $1,077.45 |

| Amount Invoiced: | Comm % | Commission | Invoice Amount |
|---|---|---|---|
| $749,905.20 | 10 | $71,750.00 | $678,155.20 |

Note:

CRC TO FILE TAXES!       THANKS FOR THE ORDER!!

Agency Bill                                                                    SCHASE

**CRC**

PO Box 59689  Birmingham, AL 35259-9689  Phone: (800) 824-1709 Fax: (205) 879-3739

# CONFIRMATION OF COVERAGE BOUND
## (BINDER CONFIRMATION)

| | | | |
|---|---|---|---|
| **Date:** | Jun 24, 2013 | | |
| **Attn:** | Jane Wilson | **Phone #:** | (801) 715-7112 |
| **Agency:** | Moreton & Company - Salt Lake City | **Fax #:** | (801) 531-6117 |
| **From:** | Susan Chase for Joe LaRocca | **Binder Confirmation Expiration:** 7/1/2013 |

> We are pleased to confirm the following coverage that has been bound by the carrier shown below.  Please note that this binder confirmation is based on the coverage, terms and conditions listed below, which may be different from those requested in your original submission.  As you are the representative of the Insured, it is incumbent upon you to review the terms of this binder confirmation carefully with your Insured, and reconcile any differences from the terms requested in the original submission.   CRC Insurance Services, Inc. disclaims any responsibility for your failure to reconcile with the Insured any differences between the terms confirmed below and those terms originally requested.
>
> **This coverage may not be bound without a fully executed brokerage agreement.**

| | | | |
|---|---|---|---|
| **Insured Name:** | State of Utah | **ID#:**3399369 - | |
| **Mailing Address:** | 5120 State Office Building | | |
| | Salt Lake City, UT 84114 | | |
| **Physical Address:** | 5120 State Office Building | | |
| | Salt Lake City, UT 84114 | | |
| **Description:** | Municipality / Government | | |
| **Carrier:** | Lexington Insurance Company - Boston  NAIC: 19437 | | |
| **Coverage:** | **PUBLIC ENTITY SELECT** | **Policy Number:** | 048883349 |
| **Effective:** | 7/1/2013 | **Expiration:** | 7/1/2014 |

**Limits of Liability:**

| | |
|---|---|
| $20,000,000 | BI, PD & Personal and Advertising Injury Aggregate Limit |
| $10,000,000 | Each Occurrence |
| . | |
| $10,000,000 | Automobile Each Occurrence Limit |
| . | |
| $20,000,000 | Error & Omissions Aggregate Limit |
| $10,000,000 | Each Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Practices Aggreage Limit |
| $10,000,000 | Each Employment Practices Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Benefit Aggregate Limit |
| $10,000,000 | Each Employment Benefit Wrongful Act Limit |
| . | |
| Defense: | Inside the Policy limit and erode the applicable Retained Limit |
| | |
| **SIR:** | $1,000,000    Each Occurrence and Wrongful Act Retention or Combination of Occurrence and Wrongful Act |

| | | | |
|---|---|---|---|
| **Policy Premium:** | $717,500.00 | | |
| **TRIPRA Premium:** | INCLUDED | | |
| **Policy Fee** | **$800.00** | | |
| **Surplus Lines Tax:** | $30,527.75 | | |
| **Stamping Office Fee:** | $1,077.45 | | |
| **TOTAL :** | $749,905.20 | | |
| **Commission:** | 10% | **MEP:** | 25% |

**Terms & Conditions:**
25% Minimum Earned Premium
100% Minimum & Deposit

SUBJECT TO:
Prior to binding, please provide the following:
1) Completed and signed broker responsible for Surplus Lines Filing Agreement

The insurer issuing this policy does not hold a certificate of authority to do business in this state and thus is not fully subject to regulation by the Utah Insurance Commissioner. This policy receives no protection from any of the guaranty associations created under Chapter 28, Title 31A (UC 31A-15-103 [8]).

**Home State: UT**
The Home State was determined based on the information provided in your submission and the completed Declaration of Home State form.  Please ensure the correct Home State is listed.  Incorrect information could result in additional or return taxes, fees, surcharges, penalties, interest, and assessments at a later date, and in addition to what is shown.  Additionally, please note that this is the current tax calculation based on the Home State but there could be changes that result in additional or return tax - due at a later date - based on future enactments of surplus lines laws by any of the various states.

Attach:
· Crisis Response Coverage Extension Endorsement (LX8703 05/11)
The Crisis Response Coverage Extension Endorsement is included under this policy at no additional premium charge from Lexington Insurance Company. This endorsement can provide coverage for public relations expenses and media management services for the purpose of maintaining and restoring public confidence in you in the event of a man-made
emergency situation that involves bodily injury or property damage to multiple persons and results in significant adverse regional or national news media coverage. The endorsement provides up to $50,000 per crisis event for public relations expense and media management services, and up to a separate $250,000 per crisis event to fund certain reasonable and necessary direct costs of the initial crisis response. These limits of insurance are subject to a maximum Aggregate Limit of $300,000. The limits of insurance provided under the endorsement are separate and do not erode the overall limits of the policy.  In case of a crisis event, you must contact us within twenty-four (24) hours at 877-743- 7669. THIS PHONE NUMBER IS ONLY FOR REPORTING A CRISIS EVENT AND IS NOT INTENDED FOR ANY OTHER CLAIM REPORTING OR GENERAL INQUIRY.
· Act of Terrorism Retained Limits Endorsement (LX8369 11/07)
· Additional Insured as Required by an Insured Contract
· Named Insured Amendatory Endorsement, Manuscript
· School Endorsement, Manuscript
· Healthcare Exclusion Endorsement (With Stated Exceptions), Manuscript
· Fungus/Mold Exclusion w/ Limited Exception, Manuscript
· Exclusion for Immunity Granted to Any Insured, Manuscript

Joe LaRocca

3399369

**CONFIDENTIAL**

From: Susan Chase (AL) <schase@crcins.com>
Sent: Thursday, June 13, 2013 6:30 PM
To: Rob Callister; Jane Wilson
Cc: Joe LaRocca (AL)
Subject: RE: State of Utah - Pol# 048883349 [SYS*REF#3399369]   EXL
Attachments: Invoice#1149228.PDF; Binder - UMB_3399369.PDF

Attached is binder and invoice for the above captioned insured effective 7/1/2013. Policy number is
048883349.

Jane: Per my pervious email to you, please note that I have billed for the stamping fee and I will
reverse if it is not to be paid.

Thanks for the order!!!!
Susan J. Chase
CRC Insurance Services, Inc.
P: 205-414-2439
F: 205-986-2657
E: SCHASE@CRCINS.COM
Live Simply, Love Generously, Care Deeply, Speak Kindly, Leave the Rest to GOD.

NOTICE:  You cannot bind, alter or cancel coverage without speaking to an authorized
representative of CRC/Southern Cross. Coverage cannot be bound without written confirmation
from an authorized representative of CRC/Southern Cross.  This email and any files transmitted
with it are not encrypted and may contain privileged or other confidential information and is
intended solely for the use of the individual or entity to whom they are addressed.  If you are not the
intended recipient or entity, or believe that you may have received this email in error, please reply to
the sender indicating that fact and delete the copy you received. In addition, you should not print,
copy, retransmit, disseminate, or otherwise use this information.  Thank you.

**CRC Insurance Services, Inc.**
Lockbox Address:
PO Box 890598
Charlotte, NC 28289-0598

| Bill To:  10088 | Insured: 4247749 | Agent: 10088 | CSR:  SCHASE | Acct Exc: JLarocca |
|---|---|---|---|---|

Moreton & Company - Salt Lake City
P. O. Box 58139
Salt Lake City, UT 84158

Attn:  Rob Callister

Submission No:   3399369

**INVOICE**

| Invoice Date: | Invoice Number: | Page: |
|---|---|---|
| 6/13/2013 | 1149228 | 1 |

| Insured: State of Utah | INVOICE PAYMENT |
|---|---|
| DBA : | Payment Due On:  7/21/2013 |

| Insurance Company: | Policy Number: | Effective: | Expires: |
|---|---|---|---|
| Lexington Insurance Company - Boston | 048883349  (Renw:  SISCPEL01814812) | 7/1/2013 | 7/1/2014 |

| Type Of Transaction | Line Of Business | CompID | Amount | Comm($) | Net Due |
|---|---|---|---|---|---|
| Renewal  Business | EXCESS LIABILITY | A0009 | $717,500.00 | $71,750.00 | $645,750.00 |
| Policy Fee | | CRCAL | $800.00 | | $800.00 |
| Stamping Office Fee | | UTSLT | $1,077.45 | | $1,077.45 |

| Amount  Invoiced: | Comm % | Commission | Invoice  Amount |
|---|---|---|---|
| $719,377.45 | 10 | $71,750.00 | $647,627.45 |

Note:

THANKS FOR THE ORDER!!



PO Box 59689  Birmingham, AL 35259-9689  Phone: (800) 824-1709 Fax: (205) 879-3739

# CONFIRMATION OF COVERAGE BOUND
# (BINDER CONFIRMATION)

| | | | |
|---|---|---|---|
| **Date:** | Jun 13, 2013 | | |
| **Attn:** | Rob Callister | **Phone #:** | 801-531-1234 |
| **Agency:** | Moreton & Company - Salt Lake City | **Fax #:** | 801-531-6117 |
| **From:** | Susan Chase for Joe LaRocca | **Binder Confirmation Expiration:** 10/1/2013 |

> **We are pleased to confirm the following coverage that has been bound by the carrier shown below.  Please note that this binder confirmation is based on the coverage, terms and conditions listed below, which may be different from those requested in your original submission.  As you are the representative of the Insured, it is incumbent upon you to review the terms of this binder confirmation carefully with your Insured, and reconcile any differences from the terms requested in the original submission.  CRC Insurance Services, Inc. disclaims any responsibility for your failure to reconcile with the Insured any differences between the terms confirmed below and those terms originally requested.**
>
> **This coverage may not be bound without a fully executed brokerage agreement.**

| | | |
|---|---|---|
| **Insured Name:** | State of Utah | **ID#:**3399369 - |
| **Mailing Address:** | 5120 State Office Building | |
| | Salt Lake City, UT 84114 | |
| **Physical Address:** | 5120 State Office Building | |
| | Salt Lake City, UT 84114 | |
| **Description:** | Municipality / Government | |
| **Carrier:** | Lexington Insurance Company - Boston  NAIC: 19437 | |
| **Coverage:** | **PUBLIC ENTITY SELECT** | **Policy Number:** 048883349 |
| **Effective:** | 7/1/2013 | **Expiration:** 7/1/2014 |

**Limits of Liability:**

| | |
|---|---|
| $20,000,000 | BI, PD & Personal and Advertising Injury Aggregate Limit |
| $10,000,000 | Each Occurrence |
| . | |
| $10,000,000 | Automobile Each Occurrence Limit |
| . | |
| $20,000,000 | Error & Omissions Aggregate Limit |
| $10,000,000 | Each Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Practices Aggreage Limit |
| $10,000,000 | Each Employment Practices Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Benefit Aggregate Limit |
| $10,000,000 | Each Employment Benefit Wrongful Act Limit |
| . | |
| **Defense:** | Inside the Policy limit and erode the applicable Retained Limit |

**SIR:**      $1,000,000      Each Occurrence and Wrongful Act Retention or Combination of Occurrence and Wrongful Act

| | | | |
|---|---|---|---|
| **Policy Premium:** | | $717,500.00 | |
| **TRIPRA Premium:** | | INCLUDED | |
| **Policy Fee** | | $800.00 | |
| **State Taxes:** | | EXEMPT | |
| **Stamping Office Fee:** | | $1,077.45 | |
| **TOTAL :** | | $719,377.45 | |
| **Commission:** | 10% | **MEP:** | 25% |

25% Minimum Earned Premium
100% Minimum & Deposit

SUBJECT TO:
Prior to binding, please provide the following:
1) Completed and signed broker responsible for Surplus Lines Filing Agreement

Attach:
· Crisis Response Coverage Extension Endorsement (LX8703 05/11)
The Crisis Response Coverage Extension Endorsement is included under this policy at no additional premium charge from Lexington Insurance Company. This endorsement can provide coverage for public relations expenses and media management services for the purpose of maintaining and restoring public confidence in you in the event of a man-made emergency situation that involves bodily injury or property damage to multiple persons and results in significant adverse regional or national news media coverage. The endorsement provides up to $50,000 per crisis event for public relations expense and media management services, and up to a separate $250,000 per crisis event to fund certain reasonable and necessary direct costs of the initial crisis response. These limits of insurance are subject to a maximum Aggregate Limit of $300,000. The limits of insurance provided under the endorsement are separate and do not erode the overall limits of the policy.  In case of a crisis event, you must contact us within twenty-four (24) hours at 877-743- 7669. THIS PHONE NUMBER IS ONLY FOR REPORTING A CRISIS EVENT AND IS NOT INTENDED FOR ANY OTHER CLAIM REPORTING OR GENERAL INQUIRY.
· Act of Terrorism Retained Limits Endorsement (LX8369 11/07)
· Additional Insured as Required by an Insured Contract
· Named Insured Amendatory Endorsement, Manuscript
· School Endorsement, Manuscript
· Healthcare Exclusion Endorsement (With Stated Exceptions), Manuscript
· Fungus/Mold Exclusion w/ Limited Exception, Manuscript
· Exclusion for Immunity Granted to Any Insured, Manuscript

Joe LaRocca
3399369

CONFIDENTIAL



PO Box 59689  Birmingham, AL 35259-9689  Phone: (800) 824-1709 Fax: (205) 879-3739

# CONFIRMATION OF COVERAGE BOUND
# (BINDER CONFIRMATION)

| | | | |
|---|---|---|---|
| **Date:** | Jun 13, 2013 | | |
| **Attn:** | Rob Callister | **Phone #:** | 801-531-1234 |
| **Agency:** | Moreton & Company - Salt Lake City | **Fax #:** | 801-531-6117 |
| **From:** | Susan Chase for Joe LaRocca | **Binder Confirmation Expiration:** 10/1/2013 |

> We are pleased to confirm the following coverage that has been bound by the carrier shown below.  Please note that this binder confirmation is based on the coverage, terms and conditions listed below, which may be different from those requested in your original submission.  As you are the representative of the Insured, it is incumbent upon you to review the terms of this binder confirmation carefully with your Insured, and reconcile any differences from the terms requested in the original submission.  CRC Insurance Services, Inc. disclaims any responsibility for your failure to reconcile with the Insured any differences between the terms confirmed below and those terms originally requested.
>
> **This coverage may not be bound without a fully executed brokerage agreement.**

**Insured Name:**   State of Utah                                            ID#:3399369 -

**Mailing Address:**   5120 State Office Building
                                   Salt Lake City, UT 84114

**Physical Address:**   5120 State Office Building
                                    Salt Lake City, UT 84114

**Description:**   Municipality / Government

**Carrier:**   Lexington Insurance Company - Boston  NAIC: 19437

**Coverage:**   **PUBLIC ENTITY SELECT**                **Policy Number:** 048883349

**Effective:**   7/1/2013                                      **Expiration:** 7/1/2014

**Limits of Liability:**

| | |
|---|---|
| $20,000,000 | BI, PD & Personal and Advertising Injury Aggregate Limit |
| $10,000,000 | Each Occurrence |
| . | |
| $10,000,000 | Automobile Each Occurrence Limit |
| . | |
| $20,000,000 | Error & Omissions Aggregate Limit |
| $10,000,000 | Each Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Practices Aggreage Limit |
| $10,000,000 | Each Employment Practices Wrongful Act Limit |
| . | |
| $20,000,000 | Employment Benefit Aggregate Limit |
| $10,000,000 | Each Employment Benefit Wrongful Act Limit |
| . | |
| Defense: | Inside the Policy limit and erode the applicable Retained Limit |

**SIR:**        $1,000,000        Each Occurrence and Wrongful Act Retention or Combination of Occurrence and Wrongful Act

| | |
|---|---|
| **Policy Premium:** | $717,500.00 |
| **TRIPRA Premium:** | INCLUDED |
| **Policy Fee** | $800.00 |
| **State Taxes:** | EXEMPT |
| **Stamping Office Fee:** | $1,077.45 |
| **TOTAL :** | $719,377.45 |
| **Commission:**        10% | **MEP:**   25% |

25% Minimum Earned Premium
100% Minimum & Deposit

SUBJECT TO:
Prior to binding, please provide the following:
1) Completed and signed broker responsible for Surplus Lines Filing Agreement


Attach:
· Crisis Response Coverage Extension Endorsement (LX8703 05/11)
The Crisis Response Coverage Extension Endorsement is included under this policy at no additional premium charge from Lexington Insurance Company. This endorsement can provide coverage for public relations expenses and media management services for the purpose of maintaining and restoring public confidence in you in the event of a man-made emergency situation that involves bodily injury or property damage to multiple persons and results in significant adverse regional or national news media coverage. The endorsement provides up to $50,000 per crisis event for public relations expense and media management services, and up to a separate $250,000 per crisis event to fund certain reasonable and necessary direct costs of the initial crisis response. These limits of insurance are subject to a maximum Aggregate Limit of $300,000. The limits of insurance provided under the endorsement are separate and do not erode the overall limits of the policy.  In case of a crisis event, you must contact us within twenty-four (24) hours at 877-743- 7669. THIS PHONE NUMBER IS ONLY FOR REPORTING A CRISIS EVENT AND IS NOT INTENDED FOR ANY OTHER CLAIM REPORTING OR GENERAL INQUIRY.
· Act of Terrorism Retained Limits Endorsement (LX8369 11/07)
· Additional Insured as Required by an Insured Contract
· Named Insured Amendatory Endorsement, Manuscript
· School Endorsement, Manuscript
· Healthcare Exclusion Endorsement (With Stated Exceptions), Manuscript
· Fungus/Mold Exclusion w/ Limited Exception, Manuscript
· Exclusion for Immunity Granted to Any Insured, Manuscript


Joe LaRocca
3399369

**CONFIDENTIAL**